Harry J. JOE and Jenkens & Gilchrist, A Professional Corporation, Petitioners,

v.

TWO THIRTY NINE JOINT VENTURE, Respondent.

No. 02–0218.

Supreme Court of Texas.

Argued April 9, 2003.

Decided Sept. 3, 2004.

Jeff Archer, Austin, for Amicus Curiae J.E. "Buster" Brown.

Roger Townsend, Alexander Dubose Jones & Townsend LLP, Houston, for Amicus Curiae Greenberg Traurig of New York.

Reagan W. Simpson, King & Spalding LLP, Houston, for Amicus pro se.

N. Bennett Sandlin, Austin, for Amicus Curiae Texas Municipal Leaguetexas Municipal League.

Amy Warr, Office of Attorney Gen., Austin, for Amicus Curiae The State of Texas.

Boyd Aaron Mouse, Kane Russell Coleman & Logan, David L. Patterson, Godwin & Gruber, L.L.P., Dallas, for other interested parties.

Russell James DePalma, Michael P. Lynn, John T Cox, Lynn Tillotson & Pinker, LLP, Robert E. Goodfriend, McKool Smith, P.C., B. Prater Monning III, Monning & Wynne, L.L.P., Dallas, for Petitioners.

Donald E. Godwin, David L. Patterson, Chad Michael Ruback, Godwin & Gruber, L.L.P., Dallas, for Respondent.

Justice WAINWRIGHT delivered the opinion of the Court.

■ We consider the applicability of legislative and official immunity to legislators, who are also practicing attorneys, when their public and private professional responsibilities conflict. Our legal system has long recognized the vital role of the fiduciary duties that attorneys owe their clients. Our system of government charges legislators with fidelity to the public trust in the discharge of their official duties. We affirm the vitality of both obligations. However, when these obligations conflict, we hold that legislative immunity shields lawyer-legislators from civil liability for activities within their legislative capacities.

A shareholder in a law firm, who also served as a legislator on a city council, voted in favor of an ordinance that adversely affected a firm client. The client sued the shareholder and his firm for malpractice for (1) negligently failing to inform the client in advance of the city council meeting at which the ordinance was passed and (2) breach of fiduciary duty arising from a failure to avoid or disclose a conflict of interest created by the shareholder's support of the ordinance and his vote. We conclude, based on undisputed summary judgment evidence, that notifying the client of the council meeting was outside the agreed scope of the representation, and therefore, there was no duty to inform the client of the meeting. We also conclude that the lawyer-legislator is immune from liability for any conflict of interest arising from his support of, preparation for, and vote on the ordinance. Because the client's claims against the firm derive from the actions of the shareholder, the firm is not liable for failing to disclose a conflict of interest arising from the shareholder's legislative and official actions. We reverse the court of appeals and render judgment in favor of the lawyer-legislator and the law firm.

I. Factual and Procedural Background

In 1992 William Thau, an attorney and shareholder with the law firm of Jenkens & Gilchrist, P.C. (Jenkens), began his representation of Two Thirty Nine Joint Venture (239 JV). He provided legal services for 239 JV's formation and its acquisition, development, and sale of 239 acres of land in Irving, Texas. By the summer of 1994, 239 JV had sold all but 11 of the 239 acres. At the request of 239 JV, Thau reviewed a contract for the sale of the remaining 11 acres as an apartment tract and drafted an amendment to the contract. The contract provided the potential buyer with a review period and a right to reject the contract before September 17, 1994.

On Sunday, September 4, 1994, the Irving City Council posted a 72–hour notice of a meeting to consider, among other items, an ordinance that would place a 120–day moratorium on apartment construction in Irving. At the September 7, 1994 Council meeting at which the ordinance was discussed, Councilperson Harry Joe, also a shareholder at Jenkens, moved to impose the moratorium. The ordinance imposing the moratorium passed unanimously. As a result, the potential buyer of 239 JV's 11 acres cancelled the contract. Joe had not told anyone at Jenkens or 239 JV about the meeting, its agenda, or his position on the moratorium.

On November 9, 1994, Arthur Hewett and Jerry Ragsdale, principals of 239 JV, met with Joe to discuss the impact of the moratorium on 239 JV's property. Hewett and Ragsdale explained that they felt Joe should "be working to support [239 JV's] interest," stop providing leadership to those in favor of the moratorium, "stop voting against [239 JV] and stop influencing the votes of others against [239 JV]."

In a memorandum to Joe, Thau later described Joe's actions as "le[a]d[ing] the charge to impose and continue the moratorium against the building of any apartment projects" in certain Irving neighborhoods. The parties acknowledge that Joe did not agree to stop supporting the moratorium at this meeting. On December 15, 1994, after the moratorium's initial 120–day period expired, the City Council voted to extend the moratorium until May 26, 1995. Joe voted in favor of the extension.

After the extension passed, 239 JV began the process of seeking a waiver from the moratorium and discussed its options with Thau and Joe. Joe indicated to 239 JV representatives that he believed the 11–acre tract would be eligible for a waiver but that to secure a waiver of the moratorium, 239 JV would need citizen support. Both Hewett and Ragsdale testified that after these conversations, they considered Joe, as well as Thau, to be 239 JV's lawyer. There is no dispute that at this time no Jenkens attorney represented 239 JV on matters before the City Council.

In anticipation of a May 18, 1995 City Council meeting at which another extension of the moratorium would be discussed, Joe used the Jenkens library to research the legality of extending the moratorium. Although the City of Irving later reimbursed Jenkens for copying and paralegal expenses, as was customary, there is no evidence that the City paid Jenkens or Joe for any legal advice. Also in anticipation of the May 18 Council meeting, Joe sent two firm-wide voice mails advising his fellow shareholders of the subject of the upcoming vote and asking if any clients would be affected. Joe also asked the Irving city attorney to provide a written opinion regarding Joe's potential conflict of interest. The city attorney's May 16, 1995 opinion concluded that no conflict existed, but it was expressly predicated on Joe's

representation that at that time Jenkens was not representing any clients who had an interest in property that would be impacted by the moratorium. Two days later, the City Council voted to extend the moratorium by another unanimous vote, including Joe's.

In June 1995, 239 JV sought a waiver of the moratorium for the remaining 11–acre tract. The application for the waiver was denied by city officials, and 239 JV appealed to the City Council. On June 22, 1995, the Council voted to table the appeal. Joe attended this meeting but abstained from the Council vote. On July 6, 1995, the city attorney issued a second opinion at Joe's request concerning Joe's potential conflict of interest. Based on Joe's representation that Jenkens "had no active file nor active work for Two Thirty Nine Joint Venture in May and June, 1995," the opinion concluded that no conflict existed. However, Jenkens's billing records show that Bill Thau performed legal work for 239 JV during that period. After the Council tabled 239 JV's appeal, representatives from 239 JV met with members of Jenkens's executive committee. At this meeting, Jenkens shareholders promised to represent 239 JV in obtaining a waiver at no charge and asked 239 JV not to pursue legal action until Jenkens had an opportunity to try to secure the waiver. Jenkens was unable to secure the waiver for 239 JV, but the tract eventually sold in 1997 for an amount near the 1994 contract price.

■ On April 18, 1997, 239 JV filed this lawsuit. The live pleadings included claims that Joe and Jenkens owed 239 JV "a duty of ordinary care and a fiduciary duty and one of loyalty" and that the actions of Jenkens and Joe constituted a breach of those duties. The pleadings also included a section entitled "estoppel/quasi

estoppel." [1] 239 JV described the basis of its claims as Joe's and Jenkens's failure to disclose the alleged conflict of interest created by Joe's involvement with the moratorium while Jenkens represented 239 JV in ongoing efforts to sell a tract of land for an apartment building and failure to disclose matters that were material to Jenkens's representation of 239 JV (including the Council's September 1994 meeting). 239 JV claims that timely disclosure of the meeting would have allowed it to grandfather its property before the moratorium passed.

On June 12, 1997, Joe moved for summary judgment based on official immunity. 239 JV requested a continuance to conduct discovery, which the trial court denied. The trial court granted Joe's motion for summary judgment on July 11, 1997. Over a year later, after Jenkens and 239 JV conducted discovery, Jenkens filed an amended motion for summary judgment on six grounds: (1) Joe was entitled to legislative and official immunity, and Jenkens was entitled to assert any defenses that Joe could have raised since he was responsible for all of the allegedly tortious conduct, (2) chapter 171 of the Local Government Code provides 239 JV's exclusive remedy, (3) Jenkens had no duty to influence or control Joe's actions as a public servant, (4) 239 JV cannot establish proximate cause as a matter of law because the moratorium and extensions may have passed without Joe's support, (5) 239 JV waived any conflict or claim for malpractice when it consented to representation by Jenkens, and (6) 239 JV's theory of damages was impermissibly speculative as a matter of law. The trial court granted summary judgment in favor of Jenkens on September 23, 1998, and 239 JV appealed. A divided court of appeals reversed and remanded all claims against Jenkens and Joe. The court of appeals reversed the trial court's judgment in favor of Joe because it concluded that the trial court abused its discretion in denying 239 JV's motion for a continuance to obtain discovery before the summary judgment hearing. The court of appeals reversed the judgment in favor of Jenkens because (1) a fact issue existed regarding whether Joe and Jenkens breached a duty to disclose a conflict of interest arising out of Joe's activities as a public official, (2) Jenkens did not conclusively establish that Joe was immune from liability, and (3) fact issues existed as to proximate cause, damages, and waiver of a conflict of interest. Joe and Jenkens petitioned this Court for review.

## II. Standard of Review

 Jenkens moved for summary judgment under Texas Rules of Civil Procedure 166a(c) and 166a(i). Joe moved for summary judgment under Rule 166a(c). We review the trial court's summary judgments de novo. *See FM Props. Operating*

---

1. In this section, 239 JV's pleadings allege (1) that the conduct by Jenkens and Joe regarding efforts to assist 239 JV in obtaining a waiver from the moratorium constituted concealment or false representation of material facts, and in light of the fiduciary duty owed, 239 JV materially relied upon these representations to its detriment; and (2) that 239 JV reasonably relied upon Jenkens's representations and fraudulent concealment in its decision to delay litigation. These allegations raise the defense of equitable estoppel and appear to be intended to rebut defendants' assertion of the two-year statute of limitations. *See Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991). Equitable estoppel is not a cause of action but may be asserted as a defensive plea to bar a defendant from raising a particular defense. *See, e.g., Leonard v. Eskew*, 731 S.W.2d 124, 132 n. 2 (Tex.App.-Austin 1987, writ ref'd n.r.e.). However, neither Jenkens nor Joe raised statute of limitations in their summary judgment motions, so just as the statute of limitations defense is not before us, neither is 239 JV's response to that affirmative defense.

*Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Under Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex.2001); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### III. Jenkens's Motion for Summary Judgment

### A. Conflict of Interest

239 JV claims that it retained Jenkens to assist it in selling 11 acres and that Joe's leadership role, discussion, preparation, and vote regarding the moratorium created an impermissible conflict, the nondisclosure of which breached the fiduciary duty and duty of loyalty Joe and Jenkens owed to 239 JV. Jenkens contends that Joe's legislative immunity shields Joe from liability for 239 JV's claims for breach of its fiduciary duty and duty of loyalty and that the potential liability that Jenkens faces derives from its shareholder's actions as a city councilperson. We agree that without Joe's actions in this case, no conflict of interest would exist on which to predicate Jenkens's potential liability to 239 JV. Thus, if Joe is immune from liabili-

ty, Jenkens cannot be derivatively liable for Joe's actions. *See DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex.1995) (holding that an employer is entitled to assert any affirmative defenses—including official immunity—that its employee may assert); *accord Harris County v. Louvier*, 956 S.W.2d 106, 110 n. 8 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *see also Cameron Compress Co. v. Kubecka*, 283 S.W. 285, 287 (Tex.Civ.App.-Austin 1926, writ ref'd) (Respondeat superior "declares the act of the servant to be the act of the master, and that which excuses or justifies the one will in like manner excuse and justify the other."). We therefore initially address the parties' contentions regarding legislative immunity for Joe's actions.

■■■ This Court has recognized that individuals acting in a legislative capacity are immune from liability for those actions. *In re Perry*, 60 S.W.3d 857, 859 (Tex.2001). Legislative immunity applies to legislators at the federal, state, regional, and local levels of government—including city council members—who are performing "legitimate legislative functions." *Bogan v. Scott–Harris*, 523 U.S. 44, 53, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (stating that legislative immunity extends to local legislators); *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (noting that legislative immunity only protects actions within "the sphere of legitimate legislative activity"); *In re Perry*, 60 S.W.3d at 860; *see, e.g., Clear Lake City Water Auth. v. Salazar*, 781 S.W.2d 347 (Tex.App.-Houston [14th Dist.] 1989, orig. proceeding [leave denied]); *see also Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 402–05, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (extending absolute immunity to members of a regional planning agency, which was created by two states' compact and consented to by Congress); *Butz v. Economou*, 438 U.S.

478, 511–13, 98 S.Ct. 2894, 57 L.Ed.2d 895(1978) (recognizing absolute immunity for Department of Agriculture officials when performing legislative and prosecutorial functions).

■■■■ The Court assumes, without deciding, that Joe's activities in support of the moratorium on apartment construction created an impermissible conflict with his duties to 239 JV as a Jenkens shareholder. We hold that legislative immunity shields Joe from liability for any conflict of interest created by legitimate legislative functions undertaken in connection with his position as a city councilperson. We now analyze whether Jenkens established as a matter of law that the actions on which 239 JV based the alleged conflict of interest constitute legitimate legislative functions.

239 JV's pleading claimed that Joe's "leadership role, discussion or vote" in favor of the moratorium created a conflict of interest that adversely affected 239 JV. Specifically, 239 JV claimed that Joe was the "acknowledged leader of the faction of Irving citizens who oppose[d] apartment construction." 239 JV also alleged that Joe "used the resources available to him at [Jenkens] and ... had legal research performed at his request and under his direction to further the interests of the citizens group opposed to apartment construction and his political goals and interests to the detriment of 239 JV."

Jenkens's summary judgment evidence establishes as a matter of law that the actions that 239 JV claims created a conflict of interest were legitimate legislative functions undertaken by Joe as a councilperson. First, we consider Joe's vote in favor of and discussion with council members regarding the moratorium. The text of the ordinance, the City Council minutes, and Joe's affidavit establish that the ordinance at issue was a law of general application based on concerns over zoning and commercial development facing the Irving community. Joe testified that he spoke in favor of the moratorium at the September City Council meeting. Hewett's deposition testimony that "[i]t was generally believed there was a voting block, including Harry Joe, that Harry Joe controlled" does not remove Joe's legislative acts from the protection of legislative immunity. We hold that Joe's discussion, persuasion of colleagues, and vote on the ordinance were legitimate legislative functions.

We also conclude that Joe's alleged leadership role in supporting the moratorium and opposing apartment construction constituted legitimate legislative functions. Joe testified that citizens expressed concerns that an increasing number of multifamily dwellings would impact crime, gangs, schools, and parks in the area, and he concluded that the moratorium was appropriate until Irving could adopt a new comprehensive plan for development. Joe testified that he communicated with several constituents regarding the moratorium and their concerns about the increased number of multi-family dwellings in the area. Just as voting to impose and extend a moratorium on apartment construction constituted a legitimate legislative function, so was Joe's involvement with his constituents regarding a pending issue before the City Council.[2] Jenkens estab-

2. Texas Disciplinary Rule of Professional Conduct 1.13 indicates that under some circumstances not present here, an attorney's involvement with certain public interest activities could create a conflict of interest:

A lawyer serving as a director, officer or member of a legal services, civic, charitable or law reform organization, apart from the law firm in which the lawyer practices, shall not knowingly participate in a decision or action of the organization:

(a) if participating in the decision would violate the lawyer's obligations to a client under Rule 1.06; or

lished as a matter of law that the actions on which 239 JV bases the alleged conflict of interest constitute legitimate legislative functions.

▇▇▇ 239 JV's claims against Jenkens based on a conflict created by Joe's legislative actions fail because 239 JV's claims against Jenkens derive from Joe's actions. Because Joe is immune from liability for any conflict of interest that may have been created by acts within the sphere of legitimate legislative activity, Jenkens cannot be liable for those activities or for a conflict of interest created by those activities. We conclude that the trial court properly granted Jenkens's motion for summary judgment because Joe is immune from liability for failing to disclose a conflict of interest, and because of this immunity, Jenkens cannot be held derivatively liable. *See DeWitt,* 904 S.W.2d at 654.

We briefly address the summary judgment evidence showing that Joe met with representatives from 239 JV to discuss whether the 11–acre tract would be appropriate for a waiver from the ordinance. 239 JV claims that Joe gave its representatives legal advice that 239 JV was a good candidate to obtain a waiver. Whether Joe's comments could be construed as legal advice does not change our analysis. 239 JV complains that Joe's actions in favor of the moratorium were contrary to 239 JV's interests and therefore constituted a conflict of interest. We conclude that despite 239 JV's status as a Jenkens client and Joe's position as a shareholder in the firm, Joe is immune from liability for conflicts created by his legislative acts. Thus,

even if Joe provided 239 JV with legal advice, Joe is immune from claims that his legislative activities created a conflict with the client's interests.

### B. Scope of Representation

▇▇▇ 239 JV alleges that Joe and Jenkens committed legal malpractice by negligently failing to inform 239 JV of a matter material to the representation, the September 7, 1994 Irving City Council meeting at which the moratorium on apartment construction passed. 239 JV claims that timely disclosure of the impending Council vote on the moratorium would have allowed it to grandfather its property under an exception to the moratorium and then consummate the pending contract on the 11–acre tract. To recover on a claim for legal malpractice, the plaintiff must establish: (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex.1995).

▇▇▇▇▇▇ Generally, a lawyer's fiduciary duties to a client, although extremely important, "extend[ ] only to dealings within the scope of the underlying relationship of the parties." *See Rankin v. Naftalis,* 557 S.W.2d 940, 944 (Tex.1977); *see also Joseph v. State,* 3 S.W.3d 627, 639 (Tex.App.-Houston [14th Dist.] 1999, no pet.) ("The nature of the attorney-client relationship defines an attorney's duties and the professional services to be rendered."); Restatement (Third) of the Law Governing

---

(b) where the decision could have a material adverse effect on the representation of any client of the organization whose interests are adverse to a client of the lawyer. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.13, reprinted in TEX. GOV'T CODE, tit. 2, subtit. G app. A. However, Rule 1.13 does not encompass the legislative activity Joe engaged in as a city councilperson and instead limits an attorney's involvement in "legal services, civic, charitable or law reform organization[s]." In addition, we note that the Rules do not define standards of civil liability of lawyers for professional conduct. TEX. DISCIPLINARY R. PROF. CONDUCT PREAMBLE ¶ 15.

Lawyers § 16 cmt. c; § 50 cmt. d (2000) (a lawyer's duties are ordinarily limited to matters covered by the representation). While it is true that an attorney owes a client a duty to inform the client of matters material to the representation, *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988), this duty to inform does not extend to matters beyond the scope of the representation. *See, e.g., Joseph*, 3 S.W.3d at 639 (noting that an attorney could not render ineffective representation to a criminal defendant on offenses for which she was not retained to represent defendant); *Klager v. Worthing*, 966 S.W.2d 77, 83 (Tex.App.-San Antonio 1996, no writ) (holding that law firm did not assume a duty to supervise a client's medical care despite agreeing to represent client in silicone breast implant litigation); Restatement § 50 cmt. d (a lawyer is not liable for failing to act beyond the scope of representation). In fact, the lawyer may not act beyond the scope of the contemplated representation without additional authorization from the client. Tex. Disciplinary R. Prof'l Conduct 1.02; Restatement § 16, cmt. c; § 27, cmt. e.

▇▇ In this case, 239 JV argues that Joe and Jenkens had a duty to inform 239 JV of the September 7, 1994 meeting. Viewing the facts in the light most favorable to 239 JV, the scope of Jenkens's representation included Thau's reviewing and drafting sale documents for the 11–acre tract but did not include representation of 239 JV in matters before the Irving City Council. Arthur Hewett, a principal in 239 JV, confirmed that 239 JV handled its planning and zoning issues before the Irving City Council internally and that Jenkens never represented 239 JV in such matters. Such matters were thus beyond the agreed scope of representation between 239 JV and Jenkens. Moreover, the scheduling of the September 7th Council meeting was a matter of public record to which 239 JV had access. The nature of the meeting was publicly available, as evidenced by the fact that other developers took action to grandfather their plats upon learning of the pending moratorium. Because representing 239 JV before the City Council was not included in the scope of Jenkens's representation, Jenkens had no duty to inform 239 JV of the September 7, 1994 meeting. Thus, the trial court properly granted summary judgment in favor of Jenkens on 239 JV's claim that Jenkens negligently failed to inform 239 JV about the September 7, 1994 City Council meeting on the moratorium.

## IV. Joe's Motion for Summary Judgment

Less than two months after 239 JV filed this lawsuit, Joe moved for summary judgment based solely on the affirmative defense of official immunity. 239 JV filed a motion for continuance and a response to Joe's motion for summary judgment. The trial court denied 239 JV's motion for continuance and granted Joe's motion for summary judgment on official immunity. The court of appeals reversed the trial court's denial of 239 JV's motion for continuance. We reverse the court of appeals and address the merits of Joe's motion for summary judgment on official immunity.

### A. 239 JV's Motion for Continuance

In its motion for continuance, 239 JV argued that because the case had been on file for less than two months, 239 JV had been deprived of an adequate opportunity to conduct discovery to respond to Joe's motion for summary judgment. 239 JV also explained that its lead counsel had been in trial for approximately three weeks during the pendency of 239 JV's suit and attached an affidavit from counsel

in support. The trial court denied 239 JV's motion for continuance.

 The trial court may order a continuance of a summary judgment hearing if it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition." Tex.R. Civ. P. 166a(g). When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 800 (Tex.2002). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* We have considered the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery: the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id.* (diligence and length of time on file); *Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 647 (Tex.1996) (materiality and purpose); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 521–22 (Tex.1995) (materiality); *State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988) (diligence); *see also Perrotta v. Farmers Ins. Exch.,* 47 S.W.3d 569, 576 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (using these factors to decide whether a trial court abused its discretion in denying a motion for continuance).

 Here, Joe's motion for summary judgment raised a single defense to 239 JV's claims—official immunity. Official immunity protects Joe from liability if the actions of which 239 JV complains were (1) discretionary duties, (2) within the scope of Joe's authority as a city councilperson, and (3) performed in good faith under an objective reasonableness standard. *Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 422, 2004 WL 1533950 (Tex.2004); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 656 (Tex.1994). In its motion for continuance, 239 JV argued that it needed additional discovery on the second element of official immunity, claiming that "serious questions exist as to whether [Joe] acted as legal counsel for the City of Irving and certain of its constituents, rather than as councilman" and more time was required to investigate "the nature of the advice provided by [Jenkens and Joe] to the City of Irving and possibly members of the Valley Ranch Concerned Citizens Coalition, the faction of Irving citizens who oppose apartment construction." Specifically, 239 JV contended that it needed to depose Irving City Council members, members of the citizens group, Jenkens representatives with knowledge of the firm's representation of 239 JV, and the Irving city attorney. 239 JV attached the affidavit of Arthur Hewett, one of its principals, in support of these contentions. Hewett's affidavit stated that "from information available to me and other representatives of 239 JV, it appears that Joe acted in the capacity as legal counsel to the City Council of the City of Irving and possibly gave legal advice to the citizens group in Irving opposing apartment construction." Attached to Hewett's affidavit was a Jenkens invoice for reimbursement of research expenses regarding the moratorium, which Hewett claims was sent to the City of Irving, and notes from a Jenkens librarian regarding research she performed on the moratorium. Finally, 239 JV attached correspondence in which attorneys for 239 JV attempted to work with opposing counsel to schedule depositions.

We cannot conclude that the trial court's denial of the motion was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Marchand,* 83 S.W.3d at 800–01. We acknowledge 239 JV's attempts to obtain the requested discovery in the short time the case was on file and see no indication that 239 JV was merely trying to delay the summary judgment hearing. However, we do not agree that the discovery sought by 239 JV was material to its response to Joe's motion for summary judgment on official immunity. 239 JV describes its claims as arising from Joe and Jenkens's failure to disclose a conflict of interest created by Joe's involvement with the moratorium while Jenkens represented 239 JV in ongoing efforts to sell a tract of land for an apartment building and failure to disclose matters that were material to Jenkens's representation of 239 JV (including the Council's September 1994 special meeting to consider the moratorium). 239 JV argued that to respond to Joe's defense that he was officially immune from any liability from these causes of action, it needed additional discovery to determine whether Joe acted as legal counsel for the City of Irving and possibly a faction of Irving citizens who opposed apartment construction in the area and to uncover the nature of the advice Joe and Jenkens provided to the City and the citizens group. However, none of the discovery described could have raised a fact issue as to whether Joe was acting within the scope of his authority as a city councilperson as he conducted legal research on issues related to the moratori-

um, met with constituents, prepared for the City Council meetings, and participated in the deliberation and vote at the Council meeting. These are the type of activities that Joe has a duty to participate in as a city councilperson and therefore fall well within the scope of his authority as a public official. The fact that Joe, as a City Council member, utilized his legal experience in evaluating and discussing issues on the Council's agenda does not mean that he became the Council's attorney. We conclude 239 JV failed to identify "facts essential to justify [its] opposition" to Joe's motion for summary judgment, and therefore, the trial court did not abuse its discretion in denying 239 JV's motion for continuance.

## B. Official Immunity

 In reviewing the trial court's summary judgment in favor of Joe on official immunity, we consider whether Joe established each element of the defense as a matter of law. *Ballantyne,* 144 S.W.3d at 424. A city councilperson is immune from liability for actions taken (1) within the scope of authority (2) in performing the discretionary duties of the office in (3) good faith. *See id.* In his motion for summary judgment, Joe argues that "on the occasions in question he was performing his discretionary duties as Irving City Councilperson and Mayor Pro Tem, in good faith, and was acting within his authority as City Councilperson and Mayor Pro Tem" and is therefore, *immune from suit.* Joe attached his affidavit to support his motion.[3] 239 JV contended that "seri-

---

3. 239 JV objected to Joe's affidavit because (1) the affidavit failed to state that the affidavit is based upon Joe's personal knowledge and that the facts stated are true and correct and (2) the final paragraph is improper affidavit testimony because it contains legal conclusions not supported by factual assertions and because Joe is not authorized to testify about

whether Jenkens represented 239 JV. On July 10, 1997, Joe filed motion for leave to file an amended affidavit, which the trial court granted. Joe's amended affidavit explicitly stated that it was based on personal knowledge and that the facts included in his affidavit were true and correct. Joe also filed objections to Arthur Hewett's affidavit, which

ous questions exist as to whether [Joe] acted in good faith and within the scope of his authority." 239 JV contends its evidence creates a fact issue that precludes summary judgment in favor of Joe. 239 JV attached the following evidence to its response: the affidavit of Arthur Hewett (a principal of 239 JV), Jenkens's billing statements addressed to 239 JV, a letter to the Irving city attorney from Bill Thau, two memos from the city attorney to Joe, an unaddressed expense reimbursement from Jenkens, a Westlaw research cover page containing written notes, and the minutes from the June 22, 1995 Irving City Council meeting.

239 JV claims that Joe's position and actions related to the moratorium created an impermissible conflict of interest that Joe had a duty to avoid or disclose to 239 JV. Assuming that a conflict of interest between Joe's obligations to 239 JV as a firm client and his actions as a city councilperson existed, we hold that official immunity extends to protect Joe from liability for any conflict of interest that his vote or other discretionary duties undertaken in good faith and within the scope of his authority as a councilperson may have created. We now analyze whether Joe established as a matter of law that he was acting in good faith and within the scope of his authority as a city councilperson in performance of the discretionary duties of the office.

In his affidavit, Joe explains that he was a member of the Irving City Council on September 7, 1994, and after considering alternative courses of action, he voted to adopt an ordinance that imposed a moratorium on the acceptance and processing of multi-family development permits for 90 days at the September 7 City Council meeting. We conclude that Joe's affidavit established as a matter of law that his actions involved personal deliberation, decision, and judgment characteristic of a discretionary act that was delegated to him as a public official. *See Ballantyne,* 144 S.W.3d at 425. In its response to Joe's motion for summary judgment, 239 JV did not dispute that Joe was performing discretionary duties as a councilperson.

Joe's affidavit establishes that voting on the moratorium was within the scope of his authority as an Irving city councilperson, and 239 JV does not dispute that. However, 239 JV argues that Joe's other activities concerning the moratorium fall outside the scope of Joe's authority as a councilperson. Joe's affidavit states that in the spring of 1995, he conducted legal research, with the assistance of his firm's librarian, to study the legality of extending the moratorium because of threatened litigation against the City regarding the legality of the moratorium and "to confirm that an extension of the moratorium was in Irving's best interest." In its response to Joe's motion for summary judgment, 239 JV argues that Joe's legal research on the legality of the moratorium was inappropriate because (1) his actions were beyond the scope of authority of a councilperson and created an attorney-client relationship between the City and Joe, and (2) Joe developed an attorney-client relationship with the Citizen's Coalition Group in Irving by "apparently [giving] citizens of Irving the legal research he developed to help them further his cause." 239 JV argues that these actions created a conflict of

---

was attached to 239 JV's response to Joe's motion for summary judgment. The record does not indicate that the trial court ruled on either parties' objections but on July 11, 1997 granted Joe's motion for summary judgment,

relying on "the Motion, supporting affidavits, the Response and supporting affidavits (to the extent admissible), and the pleadings." We consider Joe's amended affidavit and Hewett's affidavit as filed.

interest that Joe was required to avoid or disclose and resolve with 239 JV.

 We conclude that 239 JV's evidence does not create a fact issue that Joe was acting beyond the scope of his authority as a city councilperson. Conducting legal research in preparation for a city council vote does not create an attorney-client relationship between Joe and the City, and sharing that information with fellow council members as part of deliberations does not change that conclusion. 239 JV points to a Jenkens billing statement titled "Gen. Expense Reimbursement–H. Joe" as evidence that Joe and the City had an attorney-client relationship. The statement, which 239 JV argues was submitted to the City for payment, is an administrative reimbursement for the librarian's retrieval of requested case law and did not include any charges for Joe's services. Thus, Joe's motion for summary judgment establishes that Joe's research was in preparation for a city council meeting, was not part of legal services provided to the City of Irving, and does not create an attorney-client relationship between Joe and the City as a matter of law.

 The only evidence that 239 JV cites to support its contention that Joe developed an attorney-client relationship with the Citizen's Coalition Group in Irving is the following paragraph from Hewett's affidavit:

I was present at the Irving City Council Meeting held on or about June 22, 1995, wherein 239 JV's request for an exemption from the moratorium was considered. At one point during the meeting, a gentleman named Jim Parrow, identified himself by name and as a proponent of the moratorium. This gentleman then cited 5th Circuit case law to the City Council in support of the legality of the moratorium. Based upon these and other facts, it is my belief that Mr. Joe

requested that legal research be performed at [Jenkens] for the purpose of advising the Irving City Council of the power of the City Council to impose the moratorium and supporting the citizens group favoring the moratorium.

Nothing in this paragraph indicates that Joe served as a lawyer for a citizens group. Hewett's speculation is not evidence of an attorney-client relationship between Joe and a citizens group and therefore, does not create a fact issue on whether Joe was acting outside the scope of his authority as a councilperson during his interactions with constituents or during his preparations and research for city council meetings. Joe's evidence establishes that he acted within the scope of his authority as a councilperson as a matter of law.

 We now turn to whether Joe acted in good faith while executing the discretionary functions required of him as a city councilperson. To determine whether a public official has acted in good faith, we use an objective standard, asking whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *Ballantyne*, 144 S.W.3d at 426; *Chambers*, 883 S.W.2d at 656. The standard of good faith as an element of official immunity is not a test of carelessness or negligence, or a measure of an official's motivation. *Ballantyne*, 144 S.W.3d at 426.

Joe's motion for summary judgment and accompanying affidavit establishes that he acted in objective good faith when he prepared for the Council meetings and voted on the moratorium and its extensions. In his affidavit, Joe details Irving's growing number of multi-family dwellings compared to single family residences and contrasts that ratio to neighboring communi-

ties with specific numbers. He explains his constituents' and the mayor's concerns regarding the increase of multi-family dwellings in Irving and the increasing ratio of multi-family dwellings to single family dwellings. In addition, Joe states that the council members, including himself, considered alternative actions before voting to impose a temporary moratorium on the acceptance and processing of multi-family development permits. In his affidavit, Joe also explains that when the City Council considered extending the moratorium in May 1995, Joe "concluded that the moratorium should in fact be extended, at least until the City of Irving was able to adopt a new comprehensive plan for further multi-family development" "[a]s a result of input from citizens, and based upon [his] own observations."

239 JV's response to Joe's motion for summary judgment provides no relevant evidence to support its contention that Joe failed to act in objective good faith when voting on the moratorium or conducting research in preparation to vote on the moratorium. Instead, in its briefing to this Court, 239 JV argues that "Joe misrepresented the existing attorney-client relationship between [Jenkens] and 239 JV to avoid any accusations of a conflict of interest" and that "[n]o reasonable private attorney/public official would completely disregard his private clients in pursuing his political agenda thereby ignoring potential conflict issues." Neither this argument, nor 239 JV's evidence in response to Joe's motion for summary judgment, refute Joe's evidence that he acted in objective good faith. Joe established, as a matter of law, that a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct, preparing for and voting in favor of the moratorium, was justified. Thus, Joe established as a matter of law that he was officially immune from liability for the alleged conflict of interest arising from his activities as an Irving city councilperson.

## V. Conclusion

For the foregoing reasons, we reverse the court of appeals' judgment and render judgment that 239 JV take nothing.

Justice SCHNEIDER did not participate in the decision.