

★ ★ ★ Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio
★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00051-CV

**SOMERSET INDEPENDENT SCHOOL DISTRICT**
and Somerset Independent School District Public Facility Corp.,
Appellants

v.

**NICHOLSON PROFESSIONAL CONSULTING, INC.**,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2003-CVQ-001551-D3
Honorable Elma Salinas Ender, Judge Presiding

Opinion by:     Alma L. López, Chief Justice

Sitting:        Alma L. López, Chief Justice
                Catherine Stone, Justice
                Sandee Bryan Marion, Justice

Delivered and Filed:  October 15, 2008

REVERSED AND REMANDED

Somerset Independent School District and Somerset Independent School District Public

Facility Corp. ("Somerset) appeal the trial court's order granting the Second Amended Motion for

Summary Judgment and No-Evidence Motion for Summary Judgment filed by Nicholson

Professional Consulting, Inc. ("NPCI").  Somerset contends that the trial court erred in granting

NPCI's traditional motion for summary judgment because genuine issues of material fact exist as

to: (1) the elements of "legal duty" and "proximate cause" in regard to Somerset's negligence claim; and (2) NPCI's role as project manager in regard to Somerset's claim for breach of implied warranty. Somerset also contends that the trial court erred in granting NPCI's no-evidence motion for summary judgment because: (1) the motion did not challenge specific elements of Somerset's causes of action; and (2) Somerset presented more than a scintilla of evidence raising genuine issues of material fact with regard to the elements of "legal duty" and "proximate cause." We reverse the trial court's order and remand the cause to the trial court for further proceedings.

## BACKGROUND

Somerset entered into a contract with Unico Construction Co. for the construction of an early childhood center. Mid-Continent Casualty Company was Unico's surety for the project. Unico began construction in 1998, and Mid-Continent began receiving payment bond claims in December of 1998. Unico ultimately defaulted on the contract in February of 2000 when the project was 98% complete. Mid-Continent took over the project and completed it. In March of 2004, Somerset sued multiple defendants for negligence in the construction and design of the early childhood center, including NPCI, alleging faulty construction and design resulted in extensive water damage. NPCI filed its original motion seeking summary judgment in April of 2007, and the trial court granted NPCI's second amended motion on December 20, 2007. In January of 2008, the trial court granted a motion to sever NPCI from the action that remained pending against the other defendants, making the trial court's judgment final for purposes of appeal.

## STANDARD OF REVIEW

We review both traditional and no evidence summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). We consider the evidence in the light most

favorable to the non-movant and indulge all reasonable inferences and resolve any doubts in the non-movant's favor. *Id*. at 157. We will affirm a traditional summary judgment only if the movant established there are no genuine issues of material fact and it is entitled to judgment as a matter of law on a ground expressly set forth in the motion. *Id*. We will affirm a no-evidence summary judgment only if the non-movant failed to produce more than a scintilla of probative evidence raising a genuine issue of material fact on a challenged element of the cause of action. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

## DISCUSSION

Somerset contends that the documentary evidence attached to its response raised a genuine issue of material fact with regard to NPCI's role as project manager. NPCI responds that the evidence conclusively established that it was a contract administrator not an on-site manager.

Paul LaForge, a surety claims manager for Mid-Continent, was in charge of ensuring that the construction on the early childhood center was completed after Unico defaulted. LaForge stated that he hired Scott Melton as the project manager of construction operations, and he hired William McComas, an employee of NPCI, as the contract administrator. LaForge testified in his deposition that Melton was in charge of all on-site activities. Melton was responsible for the quality of work on site during the completion of the project and for ensuring that the work was completed in a good and workmanlike manner. LaForge was responsible for overseeing Melton's decisions in that regard. LaForge testified that NPCI was not involved in the construction or the design work but was only in charge of "paper-type stuff." LaForge testified that McComas "didn't have building experience, and I wasn't about to turn him lose [sic]." McComas's job was a paperwork job that LaForge would call the project manager of contract administration.

In response to NPCI's motion and to counter LaForge's testimony, Somerset relied on NPCI's invoices for its work on the project and several letters and documents signed by McComas as project manager. NPCI contends that this evidence is insufficient to raise a genuine issue of material fact because the use of the term "project management" and the title "project manager" in the invoices and letters is speculative in terms of the actual activities in which NPCI engaged.

If the invoices only used the term "project management" and the letters signed as "project manager" related exclusively to contract administration issues, we might agree with NPCI. The invoices, however, provide greater detail than merely referring to "project management," and the letters signed by McComas as project manager relate to actual details involving construction activity. Most critical, in our opinion, are the invoice entries for "On site construction management - dealing with issues as they arose." and "Onsite to deal with construction management issues as they arose." Additional entries that give rise to an inference that NPCI was not exclusively engaged in paperwork include:

- 08/01/2000 On site. ... Meet with Pete Gonzalez to review activities in general and specifically address column base plate grouting.

- 08/03/2000 On site. ... Meet with Pete Gonzalez to update him on activities and discuss column base grouting options. Discuss testing of columng [sic] base grouting with testing lab and Bill.

- 08/29/2000 On site all day coordinating efforts of subs and suppliers, meeting with owner's rep, and researching questions by subcontractors.

- 03/23/2000 Somerset- jobsited [sic] visit and review of drawings and files with regard to possible building movement

- 03/24/2000 Somerset - outlining outstanding issues needing resolution

The letters signed by McComas as project manager also appear to extend beyond paperwork issues, including a letter written to John Casanova, the superintendent of Somerset schools, regarding a

water intrusion issue. The letter stated that an investigation had been undertaken to discover the source of the water intrusion and that McComas "personally looked into the matter with Mr. Dempsey." The letter then summarized the results of the investigation and the proposed solution.

Viewing this evidence in the light most favorable to Somerset and indulging all reasonable inferences in favor of Somerset, a genuine issue of material fact has been raised with regard to the nature of NPCI's legal duty and whether it breached an implied warranty to perform the construction in a good and workmanlike manner.[1] Although NPCI also moved for summary judgment on the issue of causation because the project was 98% complete when Unico defaulted and Mid-Continent retained NPCI's services, no summary judgment evidence was presented to conclusively exclude the construction that occurred while NPCI was potentially the project manager as the cause of some of the damage to the early childhood center. Evidence was presented that the window sills, a possible source of water damage, were installed after Unico defaulted. Accordingly, based on the evidence presented, the trial court erred in granting summary judgment in favor of NPCI.

## CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings.

Alma L. López, Chief Justice

---

[1] NPCI cites *Murphy v. Campbell*, 964 S.W.2d 265 (Tex. 1997) as support for its contention that Somerset's breach of implied warranty claim is not a viable cause of action because NPCI was providing professional services. NPCI fails, however, to cite any cases that hold that construction activity by a project manager is a professional service for which the implied warranty claim is precluded. *See Centex Homes v. Buecher*, 95 S.W.3d 266, 272-73 (Tex. 2002) (discussing implied warranty of good workmanship in construction context).