**Affirmed and Opinion Filed June 15, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00921-CV

## ELIZABETH JANE BURKS, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF GENE ALDERSON BURKS, SR., Appellant
## V.
## JOHN J. DUNCAN, PH.D.; ALICIA SANGA DUNCAN; WELLMART HEARTLAB, INC. D/B/A VIASCAN OF LAS COLINAS; AND JOHN ANDREW OSBORNE, M.D., PH.D., F.A.C.C., Appellees

On Appeal from the County Court at Law No. 4
Dallas County, Texas
Trial Court Cause No. CC-12-02824-D

## MEMORANDUM OPINION
Before Justices Fillmore, Evans, and Stoddart
Opinion by Justice Stoddart

The issue in this health care liability case is whether the trial court abused its discretion by excluding plaintiff's expert witness. Elizabeth Jane Burks (Burks) filed this medical malpractice suit against John J. Duncan, Ph.D., Alicia Sana Duncan, Wellmart Heartlab, Inc. d/b/a ViaScan of Las Colinas (collectively ViaScan), and John Andrew Osborne, M.D., Ph.D., F.A.C.C., alleging they were negligent and grossly negligent in conducting a virtual colonoscopy on Gene Alderson Burks Sr., who died several days after the procedure. After a hearing shortly before trial, the trial court granted ViaScan and Osborne's motion to exclude the testimony of Dr. Bruce W. Trotman, Burks's primary liability expert. The trial court denied Burks's motion

for continuance and rendered final judgment that Burks take nothing from defendants. In two issues, Burks argues the trial court abused its discretion by excluding the expert and by denying the motion for continuance. We affirm.

BACKGROUND

The record indicates a virtual colonoscopy, unlike a traditional or optical colonoscopy, is performed by pumping air into the colon and performing a CT scan. An optical colonoscopy is performed by a physician inserting a camera device, endoscope, into the colon.[1]

Mr. Burks was seventy years old and had a history of coronary artery disease, atrial fibrillation, and hypertension. He was taking Coumadin, an anticoagulation medication. On October 19, 2010, Mr. Burks underwent a virtual colonoscopy at ViaScan's office. The procedure was apparently ordered by Osborne. James Blakely, M.D., a radiologist, reviewed the results of the virtual colonoscopy and found diverticulosis and a "filling defect" in the distal descending colon. Blakely could not determine if the filling defect was a polyp or fecal material and recommended further evaluation with an optical colonoscopy.

According to a letter from ViaScan to the Collin County Medical Examiner, Mr. Burks went to ViaScan on November 1, 2010 and "implored" them to perform another virtual colonoscopy because he did not want to undergo an optical colonoscopy. ViaScan attempted to perform a virtual colonoscopy, but was unable to because the patient's sphincter did not retain the air being injected into his colon. He was sent home. During the night, he was not feeling well and fell in the bathroom, cutting his head and breaking a rib.

Mr. Burks went to the emergency room on November 2, 2010, complaining of nausea, vomiting, and diarrhea. He also had significantly low blood pressure. A CT scan revealed a

---

[1] The colon is approximately six feet long with the cecum at one end and the sigmoid colon, near the rectum, at the other end.

large retroperitoneal hematoma. Scans revealed fluid consistent with blood around his liver and spleen. During the CT scan, Mr. Burks suffered a cardiac arrest, was resuscitated and placed in intensive care.

On arrival at the emergency room, Mr. Burks's INR (a measurement of the degree to which blood is inhibited from clotting) was 9.6, four times higher than normal. The target INR for patients taking Coumadin is 2.5. The Physician's Desk Reference (PDR) entry regarding Coumadin indicates the most common adverse reactions "are fatal and nonfatal hemorrhage from any tissue or organ." An INR greater that 4.0 is associated with a higher risk of bleeding.[2] Other adverse reactions include gastrointestinal disorders, such as nausea, vomiting, diarrhea, and abdominal pain. Doctors at the hospital diagnosed Mr. Burks with Coumadin toxicity. Trotman agreed that a major sign of Coumadin toxicity is spontaneous bleeding in the gastrointestinal tract, nose, and retroperitoneum.

Mr. Burks died approximately two weeks after he was admitted to the hospital. Burks asserts the cause of death was "Complications of colon perforation due to virtual colonoscopy." The death certificate was later amended to indicate death was caused by atrial fibrillation and pulmonary embolism.

Burks sued ViaScan for negligence alleging the second virtual colonoscopy was contraindicated, below the standard of care, and dangerous. Trotman's report stated the retroperitoneal hematoma was the direct result of a ruptured cecum that occurred during the second virtual colonoscopy at ViaScan on November 1, 2010. The report stated Mr. Burks's ruptured colon (cecum) was a direct result of the forced injection of air into his colon, which was part of the virtual colonoscopy procedure.

---

[2] The PDR includes the following instruction to patients: "COUMADIN can cause bleeding which can be serious and sometimes lead to death. This is because COUMADIN is a blood thinner medicine that lowers the chance of blood clots forming in your body." Trotman recognized the PDR as a reliable source of information.

After discovery indicated Osborne may have given verbal orders for the follow-up virtual colonoscopy, Burks sued Osborne alleging he was negligent in ordering the second virtual colonoscopy. Trotman prepared a supplemental report stating the second virtual colonoscopy was "medically contraindicated and dangerous for a patient with diverticulosis." He explained that diverticulosis represents a weakening of the wall of the colon and inflating the colon "creates an extreme degree of risk that the colon wall will rupture, as it did in Mr. Burks'[s] case."

About three weeks before trial, Trotman testified at his deposition. ViaScan filed a motion to exclude Trotman as an expert a week before the trial setting. They asserted that Trotman contradicted his opinions when he testified in his deposition that optical colonoscopy was actually a greater risk for Mr. Burks than virtual colonoscopy and that diverticulosis did not increase the risk of perforation for virtual colonoscopy. They also asserted that Trotman did not rule out other potential causes, including Coumadin toxicity and a fall causing internal injuries. The trial court heard the motion to exclude beginning on July 7, 2014, the day before trial was set to begin. Trotman did not testify at the hearing, but prepared a written declaration that was submitted during the second day of the hearing. The trial court granted the motion to exclude Trotman, denied Burks's motions for mistrial and continuance, and rendered a final judgment that plaintiff take nothing.[3]

## STANDARD OF REVIEW

For an expert's testimony to be admissible under Texas Rule of Evidence 702, the expert must be qualified, and the expert's opinion must be relevant to the issues in the case and based

---

[3] Burks reserved her right to appeal the trial court's rulings, but agreed that without an expert witness, she could not prove her case. The trial court therefore granted a directed verdict and rendered a final judgment in order to facilitate the appeal. *See First Nat. Bank of Beeville v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1989) (per curiam) ("There must be a method by which a party who desires to initiate the appellate process may move the trial court to render judgment without being bound by its terms."); *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 327–28 (Tex. App.—Dallas 2014, pet. denied).

–4–

upon a reliable foundation. TEX. R. EVID. 702; *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628–29 (Tex. 2002); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 720 (Tex. 1998); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). The relevance requirement, which incorporates traditional relevancy analysis under Texas Rules of Evidence 401 and 402, is met if the expert testimony is "'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Robinson*, 923 S.W.2d at 556 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). Evidence that has no relationship to any issue in the case does not satisfy rule 702 and is thus inadmissible under rule 702, as well as rules 401 and 402. *Id.*

Rule 702's reliability requirement focuses on the principles, research, and methodology underlying an expert's conclusions. *Id.* at 557. Under this requirement, expert testimony is unreliable if it is not grounded "'in the methods and procedures of science'" and is no more than "'subjective belief or unsupported speculation.'" *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). Expert testimony is also unreliable if there is too great an analytical gap between the data the expert relies upon and the opinion offered. *Gammill*, 972 S.W.2d at 727. In applying this reliability standard, however, the trial court does not decide whether the expert's conclusions are correct; rather, the trial court determines whether the analysis used to reach those conclusions is reliable. *Id.* at 728.

When an expert is challenged, the proponent of the expert opinion must prove the reliability of each opinion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006). The proponent bears this burden "regardless of the quality or quantity of the opposing party's evidence on the issue and regardless of whether the opposing party attempts to conclusively prove the expert testimony is wrong." *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 639 (Tex. 2009). This burden includes ensuring that the expert's testimony contains no internal

inconsistencies. *See Gen. Motors Corp. v. Iracheta*, 161 S.W.3d 462, 470–72 (Tex. 2005).

The trial court serves as a gatekeeper to screen out irrelevant and unreliable expert evidence. *Zwahr*, 88 S.W.3d at 629. The trial court has broad discretion to determine the admissibility of evidence and we review the trial court's decision under an abuse of discretion standard. *Id.* A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Whether a trial court abused its discretion in making an evidentiary ruling is a question of law. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001).

**DISCUSSION**

Burks argues in her first issue that Trotman's opinion was reliable and the trial court abused its discretion by considering the weight of the evidence and the credibility of the witness. However, based on the record presented to the trial court, we conclude the trial court did not abuse its discretion by excluding Trotman's opinions.

Trotman is a gastroenterologist, licensed in Florida, and board certified in internal medicine and gastroenterology. He is not licensed and does not practice in Texas. He has performed thousands of optical colonoscopies in his practice since 1973. He has seen patients who have had virtual colonoscopies, but has never performed a virtual colonoscopy, never witnessed one, nor observed the process of inflating (insufflation) the colon associated with virtual colonoscopy. Trotman testified that virtual colonoscopies are rarely performed in Florida where he practices. However, he states in his reports that he is familiar with the standard of care for optical and virtual colonoscopies.

In his reports, Trotman stated the standard of care for a patient with diverticulosis and a condition requiring further investigation required an optical colonoscopy be performed. He stated ViaScan and Osborne breached this standard by authorizing and performing the second

–6–

virtual colonoscopy on Mr. Burks. Trotman opined that "Performing a colonography [virtual colonoscopy] upon Mr. Burks was the direct cause of his ruptured cecum and his death. It is foreseeable that forcing air into the colon in preparation for colonography, upon a patient with diverticulosis would create a risk of perforation of the colon."

However, Trotman testified in his deposition that in terms of perforation of the colon, optical colonoscopy is ten times more likely to result in a perforation than virtual colonoscopy. He agreed that an optical colonoscopy was a greater risk for Mr. Burks:

> Q. So performing an optical colonoscopy would have been of a greater risk to Mr. Burks?
>
> A. Certainly.

Trotman explained that diverticulosis is a weakening of the colon wall. The radiologist who reviewed the results of the first virtual colonoscopy saw diverticulosis in the sigmoid colon. Trotman admitted there was no evidence of diverticulosis involving the cecum. He testified that "with or without diverticular disease," the cecum is the most likely place for a perforation due to inflation of the colon because it is the thinnest portion of the colon. Trotman stated in his reports that a patient with a diagnosis of diverticulosis and a possible polyp requiring further investigation required an optical colonoscopy and that a virtual colonoscopy was medically contraindicated and dangerous for such a patient. But in deposition, he responded:

> Q. Did the diverticulosis in the sigmoid colon increase the risk of cecal perforation?
>
> A. Not necessarily so.
>
> Q. Is that a no?
>
> A. No.

In addition, Trotman swore in his declaration that the risk of cecal perforation from a virtual colonoscopy for Mr. Burks was "not confined to the location of the diverticulosis, as the diverticulosis reflects weakness of the wall of the colon which is likely found in numerous areas

of the colon wall, including the cecum, once diverticulosis is diagnosed." Yet, Trotman admitted in his deposition testimony that there was no evidence of diverticulosis involving Mr. Burks's cecum.

There were other inconsistencies in Trotman's testimony and opinions. He testified that air bubbles in the abdomen are a sign of colon perforation and said he could see small air bubbles on the CT scans done at the hospital. However, he admitted that the radiologists who reviewed the scans at the time did not identify any air bubbles. One of Trotman's theories was that the perforation was sealed off by the bleeding that occurred at the time of the second virtual colonoscopy. But he never explained how a blood clot could form to seal off the perforation in a patient with significantly elevated INR, indicating a lessened ability to form blood clots. Trotman also testified that patients with Coumadin toxicity usually do not complain about abdominal pain, discomfort, and diarrhea. But the PDR indicates adverse reactions to Coumadin include "nausea, vomiting, diarrhea, taste perversion, abdominal pain, flatulence, bloating."

Regarding medical studies about virtual colonoscopy, Trotman testified he did not review any medical literature before he prepared his opinion and reports. He reviewed some medical studies supplied to him by Burks's attorneys a couple of weeks before his deposition. An additional medical article was identified in Burks's motion for new trial. However, the medical literature provided to the trial court does not support Trotman's opinions. One of those reports, citing several studies, noted that the symptomatic perforation rate for virtual colonoscopy is low, especially when compared to optical colonoscopy. The report also noted that patients are not sedated during virtual colonoscopy and therefore avoid the cardiopulmonary risks of sedation. Another report found the "risk of perforation may be more comparable with both techniques than previously suggested." While these reports indicate diverticulosis is a risk factor for both optical and virtual colonoscopy, they do not support Trotman's original opinion that diverticulosis is a

contraindication for virtual colonoscopy, a fact he admitted in his deposition.

If a medical expert seeks to support his opinion with medical literature, he must base his opinion on a "broad reading of the medical literature." *Minn. Min. & Mfg. Co. v. Atterbury*, 978 S.W.2d 183, 193 (Tex. App.—Texarkana 1998, pet. denied). "Broad reading of medical literature" means that the expert must "point to specific passages in varied and different sources that are generally accepted as support for his conclusion." *Id.* But Trotman formed his opinions before he looked at any medical literature. Then he looked only at what Burks's attorneys provided to him. The supreme court has rejected this type of analysis: "[C]oming to a firm conclusion first and then doing research to support it is the antithesis of this [scientific] method." *Robinson,* 923 S.W.2d at 559 (*quoting Claar v. Burlington Northern R.R.*, 29 F.3d 499, 502–03 (9th Cir.1994)). "This goal-oriented reasoning is contrary to the foundation of the scientific method." *Quiroz ex rel. Quiroz v. Covenant Health Sys.*, 234 S.W.3d 74, 89 (Tex. App.—El Paso 2007, pet. denied).

The trial court did not abuse its discretion by considering the inconsistencies between Trotman's deposition testimony and his expert reports. *See Iracheta*, 161 S.W.3d at 470–72 (proponent must ensure expert's testimony contains no internal inconsistencies). A trial court does not abuse its discretion by determining expert testimony is inadmissible when "the expert's 'processes' or 'methodologies' are obscured or concealed by testimony that is excessively internally contradictory, non-responsive or evasive[.]" *Tamez*, 206 S.W.3d at 578. The trial court also considered the medical literature in the record, which shows that the risk of perforation is less with virtual colonoscopy than with optical colonoscopy. According to another report, the risk between the procedures is "comparable."

The record shows the trial court considered and applied the guiding rules and principles applicable to the reliability of expert witness testimony. *See Gammill*, 972 S.W.2d at 727;

*Robinson*, 923 S.W.2d at 556–57. On this record, we cannot say the trial court abused its discretion by excluding Trotman's testimony. *See Larson v. Downing*, 197 S.W.3d 303, 304 (Tex. 2006) (per curiam) (In an abuse of discretion review, "[c]lose calls must go to the trial court."). Accordingly, we overrule Burks's first issue.

Burks's second issue argues the trial court abused its discretion by denying her motion for continuance to allow her time to find a new expert after the court excluded Trotman. We review the trial court's decision to deny a motion for continuance for an abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986).

Burks argues the motion to exclude was filed only a week before trial and the trial court struck her expert through no fault of her own. The record reflects Trotman's deposition was conducted only three weeks before trial. Given the late date for the deposition, the motion, which was based on the inconsistent testimony in Trotman's deposition, was reasonably filed two weeks after the deposition and one week before trial. Nothing in the record indicates the motion was delayed or untimely. Furthermore, it is the proponent's burden to present "understandable evidence that will persuade the trial court[.]" *Tamez*, 206 S.W.3d at 578. This case was on file over two years when Burks filed her motion for continuance. The docket sheet indicates Burks filed two previous motions for continuance in June 2013 and in December 2013. Given the necessity for expert testimony in a medical malpractice case, the trial court could have concluded Burks had sufficient time to obtain reliable expert testimony to support her claims.

We conclude on this record the trial court did not abuse its discretion by denying the motion for continuance. We overrule Burks's second issue.

## CONCLUSION

For the foregoing reasons, we conclude the trial court did not abuse its discretion by

excluding Trotman as an expert witness or by denying Burks's motion for continuance. Accordingly, we affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

140921F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

ELIZABETH JANE BURKS,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
GENE ALDERSON BURKS, SR.,
Appellant

No. 05-14-00921-CV       V.

JOHN J. DUNCAN, PH.D.; ALICIA
SANGA DUNCAN; WELLMART
HEARTLAB, INC. D/B/A VIASCAN OF
LAS COLINAS; AND JOHN ANDREW
OSBORNE, M.D., PH.D., F.A.C.C.,
Appellees

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-12-02824-D.
Opinion delivered by Justice Stoddart.
Justices Fillmore and Evans participating.

In accordance with this Court's opinion of this date, the final judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee John J. Duncan, Ph.D.; Alicia Sanga Duncan; Wellmart Heartlab, Inc. D/B/A Viascan Of Las Colinas; And John Andrew Osborne, M.D., Ph.D., F.A.C.C. recover their costs of this appeal from appellant Elizabeth Jane Burks, Individually And As Personal Representative Of The Estate Of Gene Alderson Burks, Sr.

Judgment entered this 15th day of June, 2016.