# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00661-CV

**Kenneth Garrett, Appellant**

**v.**

**Texas Department of Public Safety, Thomas A. Davis, Individually
and in his official capacity, Travis County and Patricia Michele Padron,
Individually and in her official capacity, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. GN302154, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After he was convicted of indecent exposure, appellant Kenneth Garrett was ordered to community supervision with the condition, among others, that he register as a sex offender. Garrett was subsequently classified as a "high-risk" sex offender, triggering various public notification requirements. Complaining of his "high-risk" classification and the content of public disclosures concerning that status and his criminal history, Garrett sued the Texas Department of Public Safety (DPS); its director, Thomas A. Davis; Travis County; and Patricia Michele Padron (the community supervision officer who classified him as "high-risk"). He sought damages under 42 U.S.C. § 1983 and common-law tort theories, plus declaratory and injunctive relief. The defendants sought take-nothing summary judgments, and Garrett filed cross-motions for partial summary judgment on his claims. The district court granted the defendants' motions and

denied Garrett's. Garrett appeals. Because Davis did not meet his burden with regard to the narrow immunity defense he presented as his sole summary judgment ground on one aspect of Garrett's common-law tort claims, we must reverse that portion of the district court's judgment. We otherwise affirm.

## BACKGROUND

The following are undisputed facts taken from the summary judgment evidence. After a fellow motorist witnessed him masturbating while driving his car near Austin's Barton Creek Mall, Garrett, an adult male, was arrested and later pleaded nolo contendere to a count of indecent exposure.[1] *See* Tex. Penal Code Ann. § 21.08 (West 2003). Within the preceding two years, Garrett had received 180 days' deferred adjudication on another indecent exposure charge and had been discharged. In Garrett's second prosecution, the trial court rendered a judgment of guilt and placed Garrett on two years' community supervision. Among other conditions it imposed, the trial court required Garrett to undergo sex offender therapy and to report to the "appropriate law enforcement authority and complete all paperwork for Sex Offender Registration." *See* Act of June 1, 1997, 75th Leg., R.S., ch. 668, § 1, 1997 Tex. Gen. Laws 2253, 2254 (codified at Tex. Code Crim. Proc. Ann. art. 62.02(a)) (redesignated and amended 2005) (current version at Tex. Code Crim. Proc. Ann. art. 62.051(a) (West 2006)).[2]

---

[1] The offense report is included in the summary judgment record. It reflects that the offended motorist contacted police during the mid-morning hours. Based on license plate information and a vehicle description provided by the witness, Garrett's vehicle was traced to the Barton Creek Mall parking lot near Dillard's, where he was employed at the time.

[2] Because the events relevant to Garrett's claims took place in 2002, our citations to chapter 62 are to the version then in effect, unless otherwise indicated.

Chapter 62 of the code of criminal procedure governs sex offender registration. It requires a person with a "reportable conviction or adjudication" or "who is required to register as a condition of parole, release to mandatory supervision, or community supervision" to register "with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days." Tex. Code Crim. Proc. Ann. art. 62.02(a). At the time of Garrett's sentencing, a "reportable conviction or adjudication" was defined to include "the second conviction" for indecent exposure under section 21.08 of the penal code. *Id*. art. 62.01(5)(F).[3] It is undisputed that Garrett had received deferred adjudication for his earlier indecent exposure charge, and had been discharged without an adjudication of guilt. *See id*. art. 42.12, § 5(c) (West 2006). Garrett has not challenged the propriety of the trial court's imposition of sex offender registration as a condition of his supervision here. *See id*. art. 62.02(a) (registration may also be required "as a condition of parole, release to mandatory supervision, or community supervision"); *cf. Coleman v. Dretke*, 395 F.3d 216, 222-25 (5th Cir. 2004) (where prisoner had not been convicted of sex crime, due process required state to afford prisoner opportunity to contest sex offender status before imposing sex offender registration and treatment as parole condition).[4]

A person required to register as a sex offender under chapter 62 is classified into one of three risk levels according to the danger the person is considered to present to the community and

___

[3] Act of May 29, 1999, 76th Leg., R.S., ch. 1415, § 8, 1999 Tex. Gen. Laws 4831, 4833-34 (redesignated and amended 2005) (current version at Tex. Code Crim. Proc. Ann. art. 62.001(5)(F) (West 2006)).

[4] Incidentally, under the current version of chapter 62, Garrett's conviction would have constituted a "reportable conviction." Tex. Code Crim. Proc. Ann. art. 62.001(5)(F) (West 2006) (definition includes "the second violation of Section 21.08 (Indecent Exposure), Penal Code, but not if the second violation results in a deferred adjudication.").

the likelihood that he or she will continue to engage in criminal sexual conduct. To that end, chapter 62 required the Texas Department of Criminal Justice (TDCJ) to establish a "risk assessment review committee," comprised of state employees representing agencies involved with sex offender issues,[5] to develop or select from among existing tools a "sex offender screening tool" that "use[s] an objective point system under which a person is assigned a designated number of points for each of various factors." Tex. Code Crim Proc. Ann. art. 62.035(a)-(c).[6] When "a person subject to registration under this chapter receives an order deferring adjudication, [or] placing the person on . . . community supervision," as did Garrett, chapter 62 provides that the "court pronouncing the order or sentence shall make a determination of the person's numeric risk level using the sex offender screening tool developed or selected under article 62.035 [and] assign to the person a numeric risk level of one, two or three." Id. art. 62.03(c).[7] The risk levels of sex offenders released from penal institutions are determined by the TDCJ or the Texas Youth Commission (TYC), as applicable. Id. art. 62.03(a). An assigned risk level may be overridden by the risk assessment review committee, the TDCJ, TYC, or a court only if the entity "believes that the risk level assessed is not

---

[5] "[T]o the extent feasible," the review committee must have at least five members, including at least one having law enforcement experience, one having experience working with juvenile sex offenders, one having experience as a sex offender treatment provider, and one having experience working with victims of sexual offenses. Tex. Code Crim. Proc. Ann. art. 62.035(a) (current version at Tex. Code Crim. Proc. Ann. art. 62.007 (West 2006)).

[6] Act of May 29, 1999, 76th Leg., R.S., ch. 1557, § 2, 1999 Tex. Gen. Laws 5354, 5356 (redesignated 2005) (current version at Tex. Code Crim. Proc. Ann. art. 62.007 (West 2006)).

[7] Act of May 4, 2001, 77th Leg., R.S., ch. 177, § 1, 2001 Tex. Gen. Laws 356, 356 (redesignated and amended 2005) (current version at Tex. Code Crim. Proc. Ann. art. 62.053 (West 2006)).

an accurate prediction of the risk the offender poses to the community" and documents the reasons for the override in the offender's case file. *Id*. art. 62.035(d).

Garrett's risk assessment was performed by his community supervision officer, Padron, using the STATIC-99, a point-based "sex offender screening tool" that had been adopted by the risk assessment review committee. Garrett's point score placed him in the category of "high-risk" sex offender—one who "poses a serious danger to the community and will continue to engage in criminal sexual conduct." *Id*. art. 62.035(c)(3). Garrett has not alleged that there was anything improper about the STATIC-99 tool itself or the fact that Padron administered it. He complains, rather, that Padron improperly "scored" three of the STATIC-99's ten questions. These questions assigned one point each if there had been (1) "any stranger victim" of the offense, (2) "any unrelated victim" of the offense, or (3) a male victim. Padron gave Garrett one point on each of these questions, relying in part on the offense report, which listed the "victim" as the motorist who had witnessed him masturbating while driving his car and called police. It is undisputed that the victim was an unrelated male unknown to Garrett. Garrett contends that these scores are inaccurate because there could not have been a "victim" of his indecent exposure offense. If Padron had not assigned a point on any of these questions, Garrett would have scored a 3 on the STATIC-99, placing him at the high end of level 2, the "moderate-risk" category ("the person poses a moderate danger to the community and may continue to engage in criminal sexual conduct."). *See id*. art. 62.035(c)(2). A score of four was the threshold for classification in the "high-risk" level, so the additional point Padron awarded on any of the three victim-related questions sufficed to elevate Garrett's score into

5

the high-risk category. As it was, Padron's scoring of a point on all three questions raised Garrett's total score to six.

As a consequence of Garrett's "high-risk" status, DPS was required to provide written notice regarding Garrett's sex offense and presence to residential addresses in the area surrounding Garrett's residence. *See id*. art. 62.045(a).[8] DPS mailed postcards, printed in both English and Spanish, titled "**NOTICE OF HIGH RISK SEX OFFENDER IN COMMUNITY**" and containing Garrett's photograph, residential address, and vital statistics. The notice also stated, "Offense: INDECENT EXPOSURE (SECOND) CONVICTION." Pursuant to chapter 62, DPS billed Garrett for its cost of sending the notices. *See id*. art. 62.045(c). This notice rather complicated Garrett's dealings with his neighbors, including spurring an attempt by his landlord to evict him from his apartment. Garrett's name, identifying information, offense information, and photograph were also allegedly posted on DPS's online sex offender registry. The registry indicated that Garrett was a high-risk offender. *See id*. art. 62.08(a), (b).[9]

Garrett subsequently sued DPS, Davis, Travis County, and Padron. His central complaints are that (1) he was "falsely" classified as (and made subject to the notification measures applicable to) a "high-risk" sex offender, an allegation that, in turn, rests upon his assertion that indecent exposure is a victimless crime and that Padron erred in scoring his STATIC-99 otherwise; and (2) DPS and Davis "falsely" gave notice that his indecent exposure conviction was his second

---

[8] Act of May 4, 2001, 77th Leg., R.S., ch. 177, § 4, 2001 Tex. Gen. Laws 356, 359 (redesignated and amended 2005) (current version at Tex. Code Crim. Proc. Ann. art. 62.056 (West 2006)).

[9] Act of June 1, 1997, 75th Leg., R.S., ch. 668, § 1, 1997 Tex. Gen. Laws 2253, 2259 (redesignated 2005) (current version at Tex. Code Crim. Proc. Ann. art. 62.005 (West 2006)).

conviction, when in fact he had received only deferred adjudication for his earlier charge. Garrett sued Davis and Padron in their individual capacities for damages under 42 U.S.C. § 1983 (predicated upon alleged infringements of what he asserts are his constitutionally-protected privacy interests), and common-law theories of defamation (publishing the "false and defamatory" statements that he was "high-risk" and twice "convicted") and intentional infliction of emotional distress (refusing to retract or correct the statements). Garrett also sought declaratory relief that (1) he is not a "high-risk" offender whose status triggers the publication or notification requirements of chapter 62, and (2) he does not have two "convictions" for indecent exposure. Finally, Garrett sought mandatory injunctive relief requiring Davis and DPS to "remove [his] name from the sex offender list and website" and "publish a retraction by the same method that the original defamation was published." It is undisputed that Garrett did not attempt to seek relief or raise his complaints in his underlying criminal proceeding.

In two separate motions, DPS and Davis, and Travis County and Padron, respectively, sought summary judgment. Each relied principally on various immunity grounds, as well as the assertion that Garrett's suit was an improper collateral attack on his criminal court judgment. Garrett also filed two motions for partial summary judgment. In his first, he sought judgment (apparently against DPS and Davis) declaring that he had not been twice "convicted" of indecent exposure and awarding attorney's fees under that claim, enjoining Davis to publish a retraction of the contrary statements, and adjudging Davis liable for defamation and intentional infliction of emotional distress. In his second partial summary judgment motion, Garrett sought similar

7

relief against all defendants with respect to his allegations that he was "falsely" classified as a high-risk offender.

The district court granted both of the defendants' summary judgment motions in full without stating the grounds and denied Garrett's partial summary judgment motions. Garrett appeals.

## ANALYSIS

In three issues, Garrett argues that the district court erred in granting both defensive summary judgment motions[10] and in denying his motion for partial summary judgment on his claims relating to his "twice-convicted status." He does not appeal the district court's denial of his partial summary judgment motion on his claims relating to his "high-risk" sex offender classification, although he insists that the defendants are not entitled to summary judgment on those claims, either.

### Standard of review

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any

---

[10] In one of his three issues, Garrett complains that Travis County and Padron improperly obtained a "no evidence" summary judgment without challenging specific essential elements of Garrett's claims. *See* Tex. R. Civ. P. 166a(i). While the phrase "no evidence" does appear in the motion filed by these defendants, their motion appears to be a traditional motion for summary judgment. *See* Tex. R. Civ. P. 166a(c). In any event, because we affirm the summary judgment in favor of these defendants on grounds other than "no evidence," we need not reach Garrett's "no evidence" complaint.

8

doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 n.4 (Tex. 2004) (citing *Knott*, 128 S.W.3d at 215-16).

When, as here, both parties move for summary judgment on overlapping grounds and the district court grants one motion and denies the other, we ordinarily review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004). Because the district court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the grounds presented to the district court are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000).

**Collateral attack**

Each defendant sought summary judgment on the ground that Garrett's conviction of indecent exposure and his failure to raise his complaints in the criminal court proceeding barred Garrett from raising those issues here. With respect to Garrett's claims relating to his classification as a "high-risk" sex offender, we agree.

As explained above, Garrett's complaint about his sex offender classification is predicated upon his contention that there was no "victim" of his indecent exposure offense. To the contrary, as this Court has recently observed, the existence of a victim is an element of the indecent exposure offense. *See Yanes v. State*, 149 S.W.3d 708, 710-12 (Tex. App.—Austin 2004, pet. ref'd).

9

While it is true that, as Garrett urges, indecent exposure is not a *victim-centered* crime for which the victim's *identity* is an essential element, the presence of *a* victim—"another [who] is present who will be offended or alarmed by his act"—is nonetheless an element. Tex. Penal Code Ann. § 21.08; *see, e.g., Roof v. State*, 665 S.W.2d 490, 491-92 (Tex. Crim. App. 1984); *Yanes*, 149 S.W.3d at 710-12.[11] Garrett's conviction for indecent exposure was a final adjudication of each of these elements, including the existence of a victim, and he cannot seek to re-litigate that fact in this proceeding. *See Delese v. Albertson's, Inc.*, 83 S.W.3d 827, 831-32 (Tex. App.—Tyler 2000, no pet.); *Johnston v. American Med. Int'l*, 36 S.W.3d 572, 576-78 (Tex. App.—Tyler 2000, pet. denied); *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 377-84 (5th Cir. 1997) (deciding issue of Texas law); *see also Kersey v. Wilson*, 69 S.W.3d 794, 798 n.1 (Tex. App.—Fort Worth 2002, no pet.) (noting appellant's plea of nolo contendere "for purposes of establishing the finality of the facts giving rise to this civil suit.").

Similarly, Garrett's section 1983 claim is subject to the "favorable termination" rule and barred because he cannot show that his conviction has been reversed or declared invalid. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Ballard v. Burton*, 444 F.3d 391, 396-97 & n.3 (5th Cir. 2006).

Additionally, Garrett's proper remedy for his complaint about his risk classification was to raise it in his criminal proceeding. Article 62.035 authorized the trial court to override a risk

---

[11] Consistent with this, the coding rules for the STATIC-99 classify indecent exposure among "Category A" crimes, which involve "sexual behavior with children and non-consenting adults," and include both "contact offenses as well as exhibitionism and voyeurism." "Category B" crimes, by contrast, "includ[e] sexual behavior that is illegal, but the parties are consenting or no specific victim is involved."

level derived from the "sex offender screening tool" if it believed that "the risk level assessed is not an accurate prediction of the risk the offender poses to the community." Tex. Code Crim. Proc. Ann. art. 62.035(d). This provision, along with article 62.03(c), contemplates that the sentencing trial court has ultimate control over the offender's risk classification. *See id.* art. 62.03(c) (when court orders person subject to registration to community supervision, it "shall make a determination of the person's numeric risk level using the sex offender screening tool developed or selected under Article 62.035."). Although Padron made the initial determination of Garrett's risk level, and the trial court judge did not do so personally, such delegations of judicial authority to others who perform services for the court are common. *See Dallas County v. Halsey*, 87 S.W.3d 552, 554-55 (Tex. 2002); *Delcourt v. Silverman*, 919 S.W.2d 777, 781-83 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *DeMoran v. Witt*, 781 F.2d 155, 157-58 (9th Cir. 1985).

Accordingly, the district court properly granted summary judgment denying Garrett relief on each of his claims predicated upon his allegedly "false" classification as a high-risk sex offender. These include (1) all of Garrett's claims against Travis County and Padron[12]; (2) all of his claims against DPS and Davis for following procedures required for high-risk sex offenders (including the fact that they mailed notices as required by article 62.045(a)) or publicly disclosed Garrett's "high-risk" status. What remain, in other words, are Garrett's claims against DPS and Davis that are predicated on statements that Garrett had two indecent exposure convictions rather than one conviction and one deferred adjudication.

---

[12] We thus do not reach their other summary judgment grounds.

11

We cannot agree with DPS and Davis that Garrett's remaining claims are impermissible collateral attacks on his criminal proceedings. Whether Garrett had two indecent exposure convictions rather than one was not an element of the offense, and there is no indication from the record that the trial court found that Garrett had two convictions.[13] Summary judgment as to these remaining claims must accordingly rest on the other grounds presented by DPS and Davis, and we turn to those now.

**Section 1983**

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (2006). A claim under this provision requires proof of two essential elements: (1) the complained-of conduct was committed by a person acting under color of state law, and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Section 1983 does not itself

---

[13] Although a "reportable conviction or adjudication" at the time included only "the second conviction" for indecent exposure under section 21.08 of the penal code, Tex. Code Crim. Proc. Ann. art. 62.01(5)(F), the trial court also could impose registration "as a condition of parole, release to mandatory supervision, or community supervision." *Id.* art. 62.02(a). There is no indication from the record that the trial court imposed sex offender registration based on a determination that Garrett's indecent exposure conviction in that proceeding was his second.

12

create substantive rights; it merely provides a remedy for federal rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Wilson v. Garcia*, 471 U.S. 261, 278 (1985); *Whitton v. City of Houston*, 676 F. Supp. 137, 139 (S.D. Tex. 1987). Section 1983 does not provide a remedy for "any and all injuries inflicted by persons acting under color of state law." *Washington v. District of Columbia*, 802 F.2d 1478, 1480 (D.C. Cir. 1986). The deprivation must be of federal constitutional magnitude. *Whitton*, 676 F. Supp. at 139.

Therefore, in order to have a valid claim under section 1983, Garrett "must plead a cause of action in which the deprivation of a federal right is implicated." *Dallas County v. Gonzales*, 183 S.W.3d 94, 110 (Tex. App.—Dallas 2006, pet. denied). To meet this requirement, Garrett pleaded that Davis, in his individual capacity, "has acted in violation of Plaintiff's constitutional right to privacy" because "the Plaintiff's name was posted on the sex offender website and postcard notification was sent out to Plaintiff's neighbors." Garrett also alleged that "the failure to correct Plaintiff's false classification on the sex offender website and retract the false statements made in the postcard notifications, even after the State was given notice that the information was false, has compounded this violation of Plaintiff's constitutionally protected privacy rights." In response, Davis argued in his summary judgment motion that his actions under chapter 62 did not implicate any constitutionally-cognizable privacy interests of Garrett.

We agree that no federal constitutionally cognizable privacy interest of Garrett was implicated by public statements that he has been twice convicted of indecent exposure when he

13

instead had one conviction and one deferred adjudication for such offenses.[14] At most, such an alleged misstatement would be akin to (though seemingly of less gravity than) a false public accusation of a crime, which, standing alone, has been held not to implicate constitutional liberty, property, or privacy interests that could support a section 1983 claim. *See Paul v. Davis*, 424 U.S. 693, 711-13 (1976); *Grennier v. Frank*, 453 F.3d 442, 444-45 (7th Cir. 2006); *In re M.A.H.*, 20 S.W.3d 860, 864 (Tex. App.—Fort Worth 2000, no pet.); *cf. Dretke*, 395 F.3d at 222-25. Because Garrett cannot point to an infringement of a federal privacy right that could support his section 1983 claim, the district court properly granted Davis's summary judgment motion as to that claim.

**Uniform Declaratory Judgments Act**

In light of our disposition of Garrett's claims regarding his risk classification, the only portion of his UDJA claim that remains is a request for a declaration "that he has not been twice convicted" and attorney's fees if he prevails on that claim. *See* Tex. Civ. Prac. & Rem. Code Ann.

---

[14] We also note that the public disclosure of the types of information of which Garrett complains has been held not to implicate the privacy rights of sex offenders. *See, e.g.*, *Paul P. v. Farmer*, 227 F.3d 98, 105 (3rd Cir. 2000) (acknowledging that, while "there is some nontrivial interest in one's home address by persons who do not wish it disclosed," such interest "must give way to the state's compelling interest in notifying the public where prior sex offenders live so that susceptible individuals can be appropriately cautioned"); *Cutshall v. Sundquist*, 193 F.3d 466, 480-81 (6th Cir. 1999) (finding that state law that required sex offenders to register with law enforcement agencies and allowed law enforcement officials to release registry information to the public did not violate sex offender's constitutional right to privacy because no fundamental interest was implicated); *Russell v. Gregoire*, 124 F.3d 1079, 1094 (9th Cir. 1997) (community notification of home addresses of sex offenders does not implicate right to privacy).

We further observe that Garrett was under community supervision at the time his sex offender information was published. Probationers have "diminished constitutional rights, including the right to privacy." *In re D.L.C.*, 124 S.W.3d 354, 365 (Tex. App.—Fort Worth 2003, no pet.) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)).

14

§ 37.009 (West 1997). The UDJA confers on Texas courts the authority to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Id*. § 37.003 (West 1997). It provides:

> A person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

*Id*. § 37.004(a) (West 1997). However, the UDJA does not alter or expand a trial court's subject matter jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

DPS and Davis assert that the district court lacked subject matter jurisdiction over Garrett's UDJA claim because (1) "[n]o justiciable controversy exists because Plaintiff's claims are barred [by] sovereign immunity or are not recognized causes of action" and (2) "declaratory judgment is not available to determine rights and legal relationships under a penal statute." We agree with the former contention and need not reach the latter.

Whether Garrett's indecent exposure conviction that triggered his registration as a sex offender was his second "conviction" for that crime or only his first is at the core of his intentional tort claims against Davis. Although Garrett professes not to assert these claims against Davis in his official capacity, he seeks a declaration against DPS and Davis in his official capacity "that [Garrett] has not been twice convicted," effectively a ruling as a matter of law on an essential element of the tort claims that Garrett asserts against Davis individually. It is, therefore, barred by sovereign

15

immunity. *See De Mino v. Sheridan*, 176 S.W.3d 359, 367-68 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Moreover, a declaratory judgment action is not appropriate when a plaintiff's cause of action is mature and enforceable in a pending suit that involves the same parties and the same issues as alleged in the declaratory judgment action. *Texas A&M Univ. Sys. v. Luxemburg*, 93 S.W.3d 410, 425 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The district court properly granted summary judgment for Davis on Garrett's UDJA claim.

**Injunctive relief**

Garrett sought a permanent, mandatory injunction ordering Davis and DPS to "remove Garrett's name from the sex offender list and website" and "publish a retraction by the same methods that the original defamation was published." This request is predicated principally upon Garrett's claims regarding his risk classification.[15] Moreover, Garrett seeks to control state action by requiring actions by state employees involving state property, yet has not pleaded a valid waiver of sovereign immunity. *See Director of Dep't of Agric. & Env't v. Printing Indus. Ass'n*, 600 S.W.2d 264, 265 (Tex. 1980); *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649

---

[15] Also, to the extent that Garrett's information is no longer published on the database or he is not subject to sex offender registration requirements, it would render moot several of Garrett's injunctive relief requests. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005); *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). The record is silent regarding these facts, although we note that Garrett's information no longer appears in the DPS sex offender database. *See* https://records.txdps.state.tx.us/DPS_WEB/Sor/index.aspx (last visited May 11, 2007). Although Garrett's two-year period of community supervision has expired, his registration obligation would ordinarily have extended for ten years thereafter. *See* Tex. Code Crim. Proc. Ann. art. 62.12(b) (current version at Tex. Code Crim. Proc. Ann. art. 62.101 (West 2006)).

16

(Tex. App.—Austin 2004, pet. denied). The district court properly granted summary judgment for Davis and DPS on Garrett's claim for injunctive relief.

**Intentional torts**

Garrett's common-law damages claims for defamation and intentional infliction of emotional distress were asserted solely against Davis in his individual capacity. Other than his "collateral attack" arguments, the sole ground on which Davis sought summary judgment on these claims was "statutory immunity" under articles 62.09 and 62.091 of the code of criminal procedure.[16] Article 62.09, subsection (b), provides that "[a]n individual, agency, entity or authority is not liable under [the tort claims act] or any other law for damages arising from conduct authorized by Subsection (a)," and subsection (a) states that DPS "may release to the public information regarding a person required to register if the information is public information under this chapter."

---

[16] Davis did invoke the federal concept of "qualified immunity" that is a defense to section 1983 claims as a ground for summary judgment on that claim, but only in that context. This defense is concerned with "whether the contours of the right" made the basis for the section 1983 claim "were sufficiently clear that a reasonable official would understand that what he or she was doing violated that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This "qualified immunity" is distinct from the defense under Texas law that is often interchangeably referred to as "qualified immunity," "quasi-judicial immunity," "discretionary immunity," or "good faith immunity." *See Travis v. City of Mesquite*, 830 S.W.2d 92, 100 n.2, 102-03 (Tex. 1992) (Cornyn, J., concurring). That "qualified" or "official immunity" is instead concerned with whether a reasonably prudent official, performing discretionary duties within the scope of his authority, could have believed, under the same or similar circumstances, that his conduct was justified based on the information he possessed when the conduct occurred. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161-62 (Tex. 2004); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653-56 (Tex. 1994). Davis did not invoke the latter concept of official immunity anywhere in his summary judgment motion, nor did he attempt to meet his summary judgment burden with regard to such a defense. *See Joe*, 145 S.W.3d at 162; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002).

17

Tex. Code Crim. Proc. Ann. art. 62.09(a), (b).[17] Article 62.091 provides that "an employee or officer

of . . . the Department of Public Safety" is "immune from liability for good faith conduct under this

chapter." *Id.* art. 62.091(1).[18]

We conclude that Davis has failed to establish that either type of statutory immunity

can support summary judgment.[19] Davis adduced no evidence to establish that his alleged actions

under chapter 62 were in good faith, as required by article 62.091. "Good faith," in the context of

immunity issues involving Texas government officials, means that a reasonably prudent official

---

[17] Act of June 1, 1997, 75th Leg., R.S., ch. 668, § 1, 1997 Tex. Gen. Laws 2253, 2260 (redesignated and amended 2005) (current version at Tex. Code Crim. Proc. Ann. art. 62.009 (West 2006)).

[18] Act of May 4, 2001, 77th Leg., R.S., ch. 177, § 5, 2001 Tex. Gen. Laws 356, 359 (redesignated and amended 2005) (current version at Tex. Code Crim. Proc. Ann. art. 62.008 (West 2006)).

[19] We do, however, disagree with Garrett's insistence that Davis's statutory immunity defense was untimely pleaded and was not properly before the district court. The record reflects that while Davis relied on statutory immunity in his timely filed summary judgment motion, he did not amend his pleadings to assert this defense until two days before the summary judgment hearing. Texas Rule of Civil Procedure 63 requires that pleadings may be filed within seven days of "trial"—including summary judgment hearings, *see Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988)—only with leave of court. Tex. R. Civ. P. 63. However, we are to construe rule 63 liberally. *Goswami*, 751 S.W.2d at 490. Unless the record reflects that the district court denied leave to amend the pleadings, we are to assume that it considered the amended pleadings, even if the pleadings were not timely filed. *See id.* at 490-91. We presume that leave to amend was granted if the motion for leave is filed within seven days of the hearing and (1) the summary judgment states that all pleadings were considered, (2) the record does not indicate that an amended pleading was not considered, and (3) the opposing party does not show surprise. *Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 276 (Tex. 1996); *9029 Gateway S. Joint Venture v. Eller Media Co.*, 159 S.W.3d 183, 187 (Tex. App.—El Paso 2004, no pet.). That is the case here. The district court's summary judgment order states that all "motions, responses, and other papers filed in this cause" were considered, there is no indication in the record that the district court actually did not consider the amended answer, and Garrett has failed to make a showing of surprise. On this record, we will presume that leave to amend the pleadings was granted and, therefore, that the affirmative defense of statutory immunity was properly before the district court.

could have believed, under the same or similar circumstances, that his conduct was justified based on the information that he possessed when the conduct occurred. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161-62 (Tex. 2004); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653-56 (Tex. 1994). Davis had the summary judgment burden of establishing good faith as a matter of law. *Joe*, 145 S.W.3d at 162. He made no attempt to meet this burden. Among other deficiencies, Davis adduced no summary judgment proof about the circumstances surrounding DPS's statements or the information Davis possessed regarding the disposition of Garrett's previous indecent exposure charge. Accordingly, summary judgment on Garrett's intentional tort claims could not have been based upon the immunity provided in article 62.091.

Although article 62.09 does not require proof of good faith, it applies only to damages claims "arising from" the release of information that is "public information" under chapter 62. Garrett questions whether article 62.09 extends so broadly as to immunize Davis against claims that he provided false information about Garrett's criminal history. We agree that, from the text of the statute, it is not immediately apparent that (1) Garrett's *number* of indecent exposure convictions, as opposed to the fact of his conviction, is "public information" under chapter 62[20]; and (2) a claim

---

[20] Article 62.08 stated that the information contained in DPS's sex offender database "is public information," subject to certain exclusions not applicable here. Tex. Code Crim. Proc. Ann. art. 62.08(b). The database, in turn, is to contain "only the information required for registration under this chapter." *Id*. art. 62.08(a). Information required for sex offender registration includes "the *type* of offense the person was convicted of." *Id*. art. 62.02(b) (emphasis added). Conceivably, "type of offense," read in context with the rest of chapter 62, could refer to the types of offenses that constitute "reportable offenses" in article 62.01, which include "the second conviction" for indecent exposure under section 21.08 of the penal code. *Id*. art. 62.01(5)(F). However, as explained above, Davis has done nothing to develop this key theory in either his summary judgment papers or appellate brief.

19

arising from an alleged misstatement of information constituting "public information" is one "arising from" the "authorized" "release [of] public information regarding a person required to register." *See* Tex. Code Crim. Proc. Ann. art. 62.09(a), (b). But Davis has not attempted to address either of these critical issues in either his summary judgment motion or appellate brief. His summary judgment argument regarding chapter 62 immunity is stated in its entirety below:

**Statutory immunity**

* * *

DPS and Director Davis are immune from liability for conduct authorized by Chapter 62 of the Code of Criminal Procedure, which is the statutory authorization for the Sex Offender Registration Program. See Tex. Code Crim. Proc. Art. 62.09 & 62.091. This would include the claim against Director Davis for defamation and intentional infliction of emotional distress.

In his appellate brief, Davis merely copies this statement verbatim and provides no further explanation, in the face of the important issues Garrett has raised, as to why we should affirm the district court's summary judgment based on the immunity provided in article 62.091. We will not affirm summary judgment based on this ground where critical issues controlling the application of section 62.091 here remain entirely undeveloped. *See* Tex. R. App. P. 38.1(h).

On this record and briefing, we must hold that the district court erred in granting summary judgment for Davis on Garrett's intentional tort claims.

**Garrett's cross-motion**

In his cross-motion for summary judgment, Garrett sought judgment that Davis was liable under his intentional tort claims. Although we have reversed the district court's summary

judgment for Davis on those claims, the general rule that we have jurisdiction to address any cross-motions does not apply because Garrett sought a partial summary judgment on liability only. *See Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 889 (Tex. 1990). We accordingly do not reach whether the district court erred in denying Garrett's cross-motion for partial summary judgment on Davis's liability for defamation and intentional infliction of emotional distress.

## CONCLUSION

We reverse and remand the district court's summary judgment in favor of Davis on Garrett's common-law damages claims for defamation and intentional infliction of emotional distress based on statements that Garrett was twice convicted of indecent exposure. We otherwise affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Henson

Affirmed in part; Reversed and Remanded in part

Filed:   May 17, 2007