

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00237-CV

IN RE A.R., A MINOR CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-98901J-13

----------

## MEMORANDUM OPINION[1]

----------

Following a bench trial, appellant E.R. (Father) appeals the trial court's order terminating his parental rights to his daughter, A.R. (Abby).[2] In his first issue, Father contends that the evidence is legally insufficient to support the grounds for termination pled by the Department of Family and Protective Services (the Department). In his second and third issues, Father argues that

---

[1]*See* Tex. R. App. P. 47.4.

[2]To protect A.R.'s anonymity, we will use "Abby" as her alias. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8(b)(2).

the trial court abused its discretion by denying his request for a 180-day extension of the statutory dismissal date and by denying his motion for continuance.  We affirm.

**Background Facts**

R.M. (Mother) gave birth to Abby in May 2013.  Soon after her birth, Abby was placed with her grandmother and then with S.M. (Great-Aunt) because her meconium tested positive for amphetamine.  An oral-fluid drug test administered at that time to Mother returned negative for amphetamine.[3]  The Department instructed Mother to submit to subsequent drug tests, which she missed.  Eventually, Mother submitted to a hair follicle test, which also returned negative.

Despite the negative drug tests, in August 2013, the Department filed a petition that requested temporary sole managing conservatorship of Abby and termination of Mother's and Father's parental rights to her if reunification could not be achieved.  At that time, Father was incarcerated for possessing less than one gram of methamphetamine and possessing while intending to distribute between four and two hundred grams of gamma hydroxybutyric acid (GHB).[4]

---

[3]The clerk's record indicates that in May 2013, Mother admitted to using methamphetamine in 2012 and had previously tested positive for illegal drugs.

[4]In March 2013, a trial court sentenced Father to eight years' confinement for the possession-with-intent-to-deliver offense and six months' confinement for the straight-possession offense.  Father concedes that he was "incarcerated . . . at all times during the pendency of this case."

The Department attached an affidavit to its petition to inform the trial court of the events preceding Abby's removal and of a previous case involving Abby's older brother, A.R.[5] The trial court named the Department as Abby's temporary managing conservator. Father filed an answer that contained a general denial.

The Department filed a family service plan. The plan set out a goal of family reunification; explained the reasons for Abby's removal;[6] and assigned tasks to Mother and Father, including meeting Abby's basic health and safety needs, abstaining from drug and alcohol use and criminal activities, maintaining legal and stable employment, and completing anger management and parenting classes.

From October 2013 to July 2014, the Department monitored the parents' compliance with the plan. In March 2014, the Department informed the trial court that Father was confined from December 2012 to March 2013, was released for about a month, and then went to prison for drug-related charges. The Department also reported that Mother had failed a drug test in the summer of 2013 and that Father was still confined and had therefore not progressed toward completing the requirements of the service plan. The Department changed Abby's permanency goal to adoption by a relative.

---

[5]The Department removed A.R. from the home prior to Abby's birth because Mother and Father were "making and selling drugs and using them."

[6]The service plan stated that Abby's parents had "put their need for drugs above the needs of [the] child."

3

In July 2014, when Abby was a little over a year old, the trial court held a bench trial. Father requested a continuance and a 180-day extension of the statutory dismissal date[7] to allow more time to complete his prerelease programs and possibly be paroled. In his written motion for continuance, he argued,

> [Father] is enrolled in a drug intervention and rehabilitation program . . . . He has substantially complied with requirements for services while in [prison], including but not limited [to] counseling, [c]ognitive intervention classes, CHANGES program (Changing Habits Achieving New Goals to Empower Success)[,] and participation in Pre-release Therapeutic Community. His completion of the programming will allow for early release from jail in October 2014. He was incarcerated at the time of removal, and was not named as a cause of removal of the child in this case.

After Abby's attorney *ad litem* objected to the continuance or extension, the trial court denied both requests and commenced a trial on the merits.

Father did not appear at the trial, but the State presented testimony from the Department's caseworker and Great-Aunt to support termination of his parental rights. The trial court terminated his parental rights to Abby and appointed the Department as permanent managing conservator. In the order, the trial court found that termination was in Abby's best interest; that Father had knowingly engaged in criminal conduct that had resulted in his conviction, confinement, and inability to care for Abby for two years from the date the Department filed his petition; and that Father had engaged in conduct or

---

[7]*See* Tex. Fam. Code Ann. § 263.401 (West 2014).

knowingly placed Abby with persons who had engaged in conduct that had endangered her physical or emotional well-being.  Father brought this appeal.[8]

## Sufficient Evidence for Termination

In his first issue, Father argues that the evidence is legally insufficient to support termination because, in part, the Department failed to prove that termination is in Abby's best interest and that he "knowingly engaged in criminal conduct that has resulted in [his] . . . (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition."  Tex. Fam. Code Ann. § 161.001(1)(Q), (2) (West 2014).

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit.  Tex. Fam. Code Ann. § 161.206(b) (West 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures."  *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)).  We strictly scrutinize termination proceedings in favor of the parent.

---

[8]The trial court also terminated Mother's parental rights based on her voluntary relinquishment; she has not appealed.

5

*In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, .206(a); *E.N.C.*, 384 S.W.3d at 802. Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397); *see also E.N.C.*, 384 S.W.3d at 802. Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802. For a trial court to terminate a parent-child relationship, the party seeking termination must establish that the parent's actions satisfy one ground listed in family code section 161.001(1) and that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder

6

could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.*

**Section 161.001(1)(Q)**

The Department may seek termination when a parent has knowingly engaged in criminal conduct that resulted in the parent's conviction, imprisonment, and inability to care for the child "for not less than two years from the date of filing the petition." Tex. Fam. Code Ann. § 161.001(1)(Q). In other words, subsection (Q) applies when a "parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time." *In re A.V.,* 113 S.W.3d 355, 356, 360 (Tex. 2003) (holding that the time period in subsection (Q) is prospective). Termination under subsection (Q) ensures that the child will not be neglected during the time the parent is incarcerated. *Id.*

Father contends that the Department could not sustain its burden under subsection (Q) because he was eligible for parole before the expiration of two

years from August 2013, when the Department filed its original petition.[9] Supreme court precedent precludes this argument.

In *In re H.R.M.*, while addressing subsection (Q), the supreme court discussed the possibility of parole and the ability of a parent to care for a child while incarcerated. 209 S.W.3d 105, 108–09 (Tex. 2006). The court determined that evidence of the availability of parole is relevant to determine whether the parent will be released within two years; however, the possibility of parole does not prevent a finding that the parent will remain incarcerated and unable to care for the child. *Id.* at 109. The court noted that parole decisions are "inherently speculative" and that the final decision regarding parole belongs to the parole board. *Id.* The court reasoned that if the possibility of parole prevented a factfinder from forming "a firm belief or conviction" that the parent would remain in jail and be unable to care for the child, termination under subsection (Q) could only occur when there was no possibility of parole. *Id.* Thus, the party seeking termination would have to show that there is no chance of early release, which would change the burden of proof from clear and convincing to beyond a reasonable doubt. *Id.*; *see In re K.D.B.*, No. 01-14-00041-CV, 2014 WL 2936008, at *5 (Tex. App.—Houston [1st Dist.] June 26, 2014, no pet.) (mem. op.) ("While the evidence illustrated the *possibility* of Father's release prior to

_____

[9]A document in the clerk's record lists Father's parole-eligibility date as December 7, 2013; his projected-release date as April 24, 2016; and his maximum-sentence date as January 5, 2021.

8

November 2014, as the court determined in *H.R.M.*, such evidence did not prevent the trial court from forming a firm belief or conviction he would remain incarcerated after that date."); *In re N.R.T.*, 338 S.W.3d 667, 675 n.5 (Tex. App.—Amarillo 2011, no pet.) (holding similarly).

The supreme court went on to consider how a parent can care for a child while incarcerated. *H.R.M.*, 209 S.W.3d at 110. The court stated in part, "Absent evidence that [a caregiver] agreed to care for the child on behalf of the incarcerated parent, merely leaving a child with a [caregiver] does not constitute the ability to provide care." *Id.*

Father offered evidence to show he might be released from prison within the relevant two-year period but not evidence of his ability to care for Abby while he is incarcerated. In his brief, Father states that he received an eight-year sentence but was eligible for parole four months after the Department began termination proceedings. Additionally, at the bench trial, Father offered Exhibit B—operating procedures for the Changes Program—in support of his potential early release from prison. In *H.R.M.*, the supreme court stated that parole eligibility and potential release within the two-year period is relevant, but the court also observed that parole dates are purely speculative. *See id.* at 109. Because Father's early release is speculative and because his eight-year sentence extends beyond the relevant two-year period, a factfinder could have formed a firm belief or conviction that he would not be paroled and would remain incarcerated for two years following the initial termination filing. *See id.*

9

Also, Father did not suggest any placements or provide proof that he is capable of caring for Abby while he is incarcerated. Great-Aunt testified that she was caring for Abby because she wanted to be Abby's "forever parent" and because it was in Abby's best interest to be in a safe environment following her removal from Mother's care. Great-Aunt did not testify that in caring for Abby, she was acting on Father's behalf. Great-Aunt also testified that Father has not provided any financial support for Abby and that she believes he is unable to take care of her. She explained, "[T]he whole reason that [Abby's brother] was taken in the beginning is because he was living in a home with two parents who were making and selling drugs and using them. And so the fact that [Father] had his son living in that environment speaks volumes to me."

Reading the record in the light most favorable to the verdict, we hold that the evidence is such that a factfinder could reasonably reach a firm belief or conviction that Father would be imprisoned and unable to care for Abby for two years from the original filing date in August 2013. Thus, we overrule Father's legal sufficiency challenge concerning the trial court's finding under subsection (Q).[10]

---

[10]In holding that the evidence is legally sufficient to support termination under section 161.001(1)(Q), we need not address Father's legal sufficiency argument concerning the trial court's finding under section 161.001(1)(E). *See* Tex. R. App. P. 47.1; *A.V.*, 113 S.W.3d at 362 & n.39; *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.).

**Abby's best interest**

Father also contends in his first issue that the Department failed to prove by clear and convincing evidence that termination is in Abby's best interest. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006). We review the entire record to determine best interest. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both the subsection (1) ground and best interest. *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002); *see E.C.R.,* 402 S.W.3d at 249.

In determining the best interest of the child, we may consider the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the plans for the child by these individuals or by the agency seeking custody, the stability of the home or proposed placement, the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.,* 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.,* 384 S.W.3d at 807.

Father argues that the evidence is legally insufficient to satisfy several of the *Holley* factors.  But we conclude that Father's criminal acts and instability, along with Abby's positive developments with Great-Aunt, support the trial court's finding that it is in Abby's best interest to terminate Father's parental rights and to proceed with the Department's permanency plan.

At the time of the termination trial, Father was incarcerated for possessing and manufacturing controlled substances.  His eight-year sentence was just the most recent result from a series of criminal acts.  He was previously convicted of assaulting a woman by hitting her with a beer bottle, providing false identification, displaying counterfeit insurance, and fraudulently using or possessing identifying information.

Father's most recent arrest occurred during a drug raid while Mother was pregnant with Abby and in the presence Abby's brother.  Father and Mother were manufacturing GHB and were also in possession of methamphetamine.  Julie Haenes Jacobson, the Department's caseworker, testified that Father's criminal behavior and continued incarceration demonstrate his inability to parent and expose Abby to potential danger.

At the termination trial, Jacobson suggested adoption by a related caregiver as a permanent plan for Abby.  The Department placed Abby with Great-Aunt when she was only twenty-two days old.  Great-Aunt and Jacobson testified that Abby is thriving and that she has bonded with Great-Aunt and Abby's brother, who is also in Great-Aunt's care.  Jacobson testified that Abby is

12

in a safe and stable environment and that it is in her best interest to remain in that environment. Jacobson testified that because Father is currently incarcerated and can only speculate about his potential release date, he lacks the stability Abby needs. Jacobson said that Great-Aunt provides Abby's "sense of stability and security."

Great-Aunt testified that she is currently in the process of adopting Abby's brother and that she would like to adopt Abby as well. She testified that she expected to be able to benefit from an adoption assistance program offered by the Department. Also, Great-Aunt testified that Father wrote her a letter stating that he approves of her raising Abby and her brother. Great-Aunt described Abby as healthy, happy, loving, and developmentally on target.

We conclude that although the record contains some evidence that a factfinder could have weighed against a decision to terminate,[11] the trial court could have formed a firm belief or conviction that termination is in Abby's best interest from the evidence of Father's lengthy criminal history (including drug-related offenses and a violent offense), continued incarceration, and lack of stability and ability to care for Abby now and in the future. *See In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (concluding that

---

[11]For example, Great-Aunt testified that she sends Father pictures and updates on Abby and her brother and that Father asks about Abby's welfare. The record also suggests that Father accepted greater punishment for his involvement in the drug charges so that Mother could avoid jail time and give birth to Abby.

13

incarceration can be considered as endangering conduct when it affects a parent's ability to provide safe living conditions or to ensure the safety and well-being of the child); *In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet.) (concluding that a parent's continuous drug use, unstable lifestyle, and criminal record threatened the physical well-being of a child and put the child at risk of injury).  Additionally, the trial court's decision to terminate could have been guided by the evidence of Great-Aunt's bond with Abby, Abby's bond with her brother, and Great-Aunt's ability to properly care for her.[12]  *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (stating that stability and permanence are important to the growth of a child and affirming a finding that termination was in the child's best interest when the child was thriving in foster care); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) (considering a child's bond with a foster family as a factor supporting the child's best interest).

We hold the evidence to be legally sufficient to support both the termination ground under section 161.001(1)(Q) and the best-interest requirement of section 161.001(2).  We overrule Father's first issue.

---

[12]Father concedes on appeal that Great-Aunt provides Abby with a "safe and stable home."

## No Abuse of Discretion by Denying Request for
## Extension and Continuance

In his second and third issues, Father argues that the trial court abused its discretion by denying his request for a 180-day extension of the statutory dismissal date and by denying his motion for continuance.

**Motion for extension under section 263.401**

The family code requires a trial court to commence a termination trial on the merits, grant an extension, or dismiss a termination suit by the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department as temporary managing conservator.[13]   Tex. Fam. Code Ann. § 263.401(a)–(b).   The extension, not to exceed 180 days, may be granted if "the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the [D]epartment and that . . . [the extension] is in the best interest of the child."   *Id.* § 263.401(b); *see In re A.J.M.*, 375 S.W.3d 599, 605 (Tex. App.—Fort Worth 2012, pet. denied) (en banc) (op. on reh'g) ("[I]t is clear that the legislature preferred and directed trial courts to complete their state-involved terminations by the one-year anniversary.").

In the trial court, Father argued (through counsel) that he was entitled to an extension because he had taken "both his own charges and [Mother's charges] so that [she] could deliver" Abby; because he had participated in rehabilitation

---

[13]The trial court rendered such an order in September 2013.

15

programs while confined; and because he could be released during the extension period, therefore allowing him an opportunity to "prove himself, get a job, get housing, and show the Department that he was prepared to take care of his child." The Department responded by contrasting Father's uncertainty with Abby's need for permanency and by contending that Father could be confined until 2021 based on his sentence. Mother and Abby, through her attorney *ad litem*, also opposed the extension. The trial court denied Father's motion. On appeal, he contends that the trial court should have extended the dismissal date to "determine whether [he] was a viable placement option for [Abby]."

We apply an abuse of discretion standard when reviewing a trial court's refusal to extend the dismissal date. *See A.J.M.*, 375 S.W.3d at 604; *In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth), *pet. denied*, 260 S.W.3d 462 (Tex. 2008). We must decide whether the trial court acted without reference to any guiding principles or whether the act was arbitrary or unreasonable. *D.W.*, 249 S.W.3d at 647.

In his brief, Father contends that he could have been released as early as October 2014, but as we explained above, his release was ultimately contingent on the parole board's decision. *See H.R.M.*, 209 S.W.3d at 109. Also, Jacobson explained that it is in Abby's best interest to be placed in the care of the Department pending adoption by Great-Aunt. Jacobson testified that Abby "deserves permanency now" and that Father "is unavailable to provide her with that permanency, [or] to provide her with a social and home environment which

16

would be safe and stable." The family code presumes that "the prompt and permanent placement of the child in a safe environment" is in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2014).

The trial court could have reasonably given weight to Abby's need for permanence and could have rationally determined that Father's speculative possibility of parole within the 180 days was not an extraordinary circumstance that justified an extension. *See* Tex. Fam. Code Ann. § 263.401(b); *see also In re A.C.H.*, No. 02-11-00072-CV, 2012 WL 1345759, at *15 (Tex. App.—Fort Worth Apr. 19, 2012, no pet.) (mem. op.) (holding that a trial court did not abuse its discretion by denying an extension when the mother was scheduled to be released from jail soon but had a pending criminal case that may have resulted in more incarceration). Thus, we hold that the trial court did not abuse its discretion by denying Father's request for the extension. We overrule his second issue.

**Motion for continuance**

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). We must determine whether the trial court's action was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). Father again argues that a continuance would have given him the opportunity to complete his prerelease services and possibly be paroled. As discussed above, the trial court considered the motion under guiding principles and determined that a

17

continuance was not needed. *See id.* The court's denial was not unreasonable. *See id.* Because the trial court acted reasonably and under the appropriate guiding principles, including the family code's preference for a prompt and permanent placement, we hold that the trial court did not abuse its discretion by denying Father's motion for continuance. Thus, we overrule Father's third issue.

## Conclusion

Having overruled all of Father's issues, we affirm the trial court's order terminating his parental rights to Abby.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED:  January 15, 2015