

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

—————————————————

No. 02-24-00445-CV

—————————————————

IN THE INTEREST OF L.I., A CHILD

---

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-741564-23

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

## I. Introduction

Appellant I.I. (Mother) appeals from an order terminating her parental rights to L.I. (Lacy).[1] In two issues, Mother argues that (1) the trial court abused its discretion by denying her motion for continuance and (2) the evidence was factually insufficient to support the trial court's best-interest finding. We will affirm.

## II. Background

Lacy was born in October 2023 and, along with Mother, tested positive for cocaine. Mother also tested positive for cocaine more than once during her pregnancy. Because of the danger to Lacy, the Department of Family and Protective Services (the Department) removed her from Mother's care three days later.

Shortly after Lacy's removal, the Department created a service plan for Mother. The service plan required that Mother complete several tasks: (1) show that she has safe and stable housing, (2) obtain employment for a minimum of six months, (3) complete parenting classes, (4) work to build a support system through community support and resources, (5) participate in a substance/alcohol-abuse assessment and follow all recommendations made, (6) maintain sobriety for a minimum of six months (and ongoing), (7) submit to a psychosocial assessment, (8) complete individual counseling,

---

[1]We use an alias to identify the child involved, and we identify family members by their relationship to the child. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

and (9) follow all recommendations from her doctor for her physical and mental-health treatment. The plan was made an order of the trial court during a status-review hearing in December 2023. Kanetra Owens, the Our Community Our Kids (OCOK) caseworker, e-mailed a copy of the plan to Mother the day after the hearing, but Mother had not signed the service plan because the Department had not been able to contact her.

Throughout the pendency of this case, Owens struggled to track Mother down. Owens first located Mother in January 2024 in the Dallas County Jail. When Owens arrived at the jail, Mother had bonded out. Owens next located Mother in February 2024; Mother was on a psychiatric hold at a hospital. When Owens arrived, she explained who she was and that Lacy was in foster care. Mother communicated that she did not "want no part to that." Owens attempted to leave a card so Mother could contact her, but Mother refused to engage. Mother also refused to sign the waiver of service and request-for-counsel form.

After seeing Mother at the hospital, Owens could not find her again—despite diligent searching—until July 2024 when she was arrested for possession of a controlled substance and terroristic threat. Owens visited Mother in the Dallas County Jail, where she signed the waiver of service and request-for-counsel form.

The trial was held on September 19, 2024. At the time of trial, Mother was still in the Dallas County Jail, and no information was presented about when she would be released. At the start of the trial, Mother's counsel moved for a continuance and an

extension of the dismissal date to allow Mother time to complete her service plan. The motion was opposed, and the trial court denied the motion and began the trial.

Owens was the sole witness at trial. The Department's initial concerns about Mother's ability to safely parent Lacy were related to Mother's drug use and extensive history of untreated mental-health concerns. Owens also testified that Mother had a previous interaction with the Department. Lacy is Mother's tenth child, and before Lacy was born, Mother had another child who was removed in Dallas County because he had also tested positive for drugs at birth. Mother was unable to be found throughout that case, and the child was later adopted.[2]

Owens testified that Mother had not shown that she could provide a safe and stable home for Lacy and that the Department had made reasonable efforts to return Lacy to Mother's care. She also testified that Lacy had not seen Mother at all during her removal.

Since her removal from Mother's care at three days old, Lacy had been in the same foster-care home and was doing well. Lacy's biological brother had been previously adopted by her foster family, and the long-term goal was for the family to adopt Lacy too. Lacy was thriving in the placement and was receiving the necessary support to continue to do so, including occupational and physical therapeutic

---

[2]The record does not reflect what happened to Mother's other eight children.

treatments, participation in a motor-skills group, and care from a neurologist. Lacy was also on a waiting list for feeding therapy.

The Department asked the trial court to terminate Mother's parental rights to Lacy on several grounds: (1) Mother's constructively abandoning Lacy, (2) Lacy's testing positive for drugs at birth, (3) Mother's failing to engage in court-ordered services, and (4) Mother's engaging in conduct that endangered Lacy and put her in endangering conditions.[3] Owens testified that termination would be in Lacy's best interest. The trial court terminated Mother's parental rights under Subsections (D), (E), (N), and (R), and found clear and convincing evidence that termination was in Lacy's best interest. *See* Tex. Fam. Code Ann. § 161.001(b).

This appeal followed. We first address Mother's second issue challenging the best-interest finding.

### III. Discussion

For a trial court to terminate a parent–child relationship, the Department must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy at least one ground listed in Texas Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. *Id.*; *In re Z.N.*, 602 S.W.3d 541,

---

[3]Though the Department's fourth ground encompasses grounds for termination under two different subsections—(D) and (E)—we note the two grounds together here because the Department posed ground (4) to Owens as a single question during her testimony.

5

545 (Tex. 2020). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

Here, the trial court found both required elements: (1) that Mother committed at least one violation—in this case four violations—under Subsection 161.001(b)(1); and (2) that termination was in Lacy's best interest.[4] Mother challenges the factual sufficiency of the evidence only as to the best-interest determination.

## A. Factual Sufficiency—Best Interest

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's finding and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide

---

[4]Under the relevant subsections, the trial court found that Mother "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child . . . (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than six months," and the Department has made reasonable efforts to return the child, but Mother has not regularly visited or maintained significant contact with the child and Mother has demonstrated an inability to provide the child with a safe environment; and (R) caused the child to be born addicted to a controlled substance, other than one obtained legally by prescription. *See* Tex. Fam. Code Ann §§ 161.001(b)(1)(D), (E), (N), (R).

6

whether a factfinder could reasonably form a firm conviction or belief that the termination of the parent–child relationship would be in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could not—because the disputed evidence that could not reasonably support the finding is too significant—then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108; *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("When the factual sufficiency of the evidence is challenged, only then is disputed or conflicting evidence under review.").

Although we presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). In determining whether evidence suffices to support a best-interest finding, we review the entire record. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *Id.* at 249; *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

(A)     the [child's] desires . . . ;

(B)     the [child's] emotional and physical needs[,] . . . now and in the future;

7

(C)     the emotional and physical danger to the child now and in the future;

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the [child's] best interest . . . ;

(F)     the plans for the child by these individuals or[, if applicable,] by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the [parent's] acts or omissions . . . indicat[ing] that the existing parent–child relationship is not a proper one; and

(I)     any excuse for the [parent's] acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors" (footnote omitted)); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012). These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of scant evidence relevant to any factor will not support such a finding. *Id.*

Without pointing us to anything particular (except for a vague reference to an unspecified "future plan"), Mother contends that the record failed to show how—but for her "temporary incarceration"—she was unable to parent Lacy. Mother also complains that the Department took no steps to assist her in completing her necessary

8

services under the family plan. Mother does not, however, contend that the Department failed to provide sufficient evidence to show that she knowingly allowed or placed Lacy in conditions or surroundings which endangered her well-being; that Mother engaged in conduct or knowingly placed Lacy with persons who engaged in conduct that endangered her well-being; that Mother constructively abandoned Lacy in the care of the Department; and that Mother used controlled substances during her pregnancy, such that Lacy was born addicted to a cocaine.

As a result, although the record reflects Mother's desire for more time to engage in her parenting plan, it also contains significant evidence that termination was in Lacy's best interest. In particular, the second, third, fourth, sixth, seventh, and eighth *Holley* factors all support the best-interest finding.

Regarding the second, third, and eighth factors—the child's present and future emotional and physical needs, the emotional and physical dangers now and in the future, and Mother's acts or omissions—the testimony and evidence showed that Lacy was born addicted to cocaine due to Mother's drug use while pregnant. Further, Mother was incarcerated at least twice during Lacy's removal, with the second instance resulting in her being incarcerated during the trial on charges of possession of a controlled substance and terroristic threat. No evidence of her anticipated release date was presented. Mother did not visit Lacy at all throughout the case and initially declared she was not interested in parenting Lacy.

Mother's continued engagement in activities dangerous to herself and Lacy, as well as her indefinite incarceration, are sufficient to support the finding that Lacy's emotional and physical needs would be in danger if she were placed in Mother's care. *See In re P.M.*, No. 02-23-00365-CV, 2024 WL 976819, at *9 (Tex. App.—Fort Worth Mar. 7, 2024, no pet.) (mem. op.) ("A parent's use of drugs may compromise the parent's ability to supervise and care for [her] children." (citing *In re K-A.B.M.*, 551 S.W.3d 275, 286 (Tex. App.—El Paso, no pet.))); *In re M.R.J.M.*, 280 S.W.3d 494, 502–03 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) ("[W]hen a parent is incarcerated, he or she is absent from the child's daily life and unable to provide support to the child, negatively impacting the child's living environment and emotional well-being."). These factors weigh in favor of termination.

Considering the fourth factor, Mother's parenting abilities, she did not exhibit any positive parenting abilities throughout the case. Mother had no interactions with Lacy since her removal and had at least two children born addicted to drugs. Mother abandoned Lacy at the hospital and, through the majority of the case, showed no interest in being part of Lacy's life. Mother's use of controlled substances during her pregnancy likewise demonstrated a lack of healthy parenting abilities. Owens also testified that Mother had not engaged in any of the court-ordered services in her case. As a result, the trial court had before it no evidence that Mother had, or was working to develop, parenting skills, and this factor weighs in favor of termination. *See In re V.S.*, No. 02-22-00063-CV, 2022 WL 2252775, at *5 (Tex. App.—Fort Worth June 23, 2022,

10

pet. denied) (mem. op.) (holding that this factor weighed in favor of termination when the parent had a history of drug problems, criminal conduct, and lack of household or employment stability, and when the parent did not engage in services or maintain contact with the child and the child was bonded with the placement family who intended to adopt the child); *see also In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.) (holding that a parent's inability to provide adequate care for her children, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest).

As to the sixth and seventh factors, the plans for the child and the stability of the home or proposed placement, Lacy was placed in a foster home with her biological brother, and the foster family intended to pursue adopting her. Lacy spent the entire case with the same family and had not seen Mother "since she was born," according to Owens. Owens testified that Lacy was thriving and had bonded with her biological brother. Additionally, in her foster home Lacy was receiving the support that she needed. Lacy was involved in occupational and physical therapeutic treatments, along with a motor-skills group, and was awaiting feeding therapy. She was also under a neurologist's care. Owens further testified that it was in Lacy's best interest to be adopted by the foster family. Mother even indicated that she was happy with Lacy's foster placement. The record reveals nothing regarding Mother's plans for Lacy's future if she were returned to Mother's care. These factors also weigh in favor of termination. *See In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.)

11

(holding that the "stability of the proposed home environment is an important consideration" when determining best interest).

Even considering that Lacy was too young to express her desires and that the record contained little evidence about programs available for Mother, we nevertheless conclude that the evidence is factually sufficient to support the trial court's best-interest finding. *See Z.N.*, 602 S.W.3d at 545; *A.C.*, 560 S.W.3d at 630–31. We overrule Mother's second issue.

## B. Motion for continuance

At the start of the trial, Mother's attorney moved for a continuance[5] to allow Mother more time to work the services in her family plan. Mother argues that the trial court should have granted the continuance because of her desire to engage in services, coupled with "the lack of harm that would come from [a] brief delay."

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002).

---

[5]Mother filed a "Motion for Continuance and for Extension of Dismissal Date" the day before trial. On appeal, Mother's argument focuses solely on the denial of the continuance. As a result, we restrict our analysis to the continuance issue. *See* Tex. R. App. P. 38.1(i). In any event, as with a motion for continuance, actions that are caused by or considered to be the parent's fault do not generally create extraordinary circumstances that warrant extending the dismissal date. *See e.g., In re X.M.B.E.*, No. 11-24-00237-CV, 2025 WL 409039, at *4 (Tex. App.—Eastland Feb. 6, 2025, no pet. h.); *In re L.C.W.*, 411 S.W.3d 116, 125 (Tex. App.—El Paso 2013, no pet.) (citing *In re K.P.*, No. 2-09-028-CV, 2009 WL 2462564, at *4 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.)).

We do not substitute our judgment for the trial court's. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). Instead, we must determine whether the trial court's action was so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). The test is whether the trial court acted without reference to guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

A motion for continuance must not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. Mother's attorney filed an affidavit in support of the motion for continuance. The trial court heard argument and denied the request.

Mother's primary argument on appeal is that, despite her unavailability throughout the first nine months of the case, she "had a plan for engaging in inpatient treatment . . . [that] would help her maintain sobriety and create a stable environment" for Lacy. Mother's claim at trial was that she had not been able to complete the plan prior to the hearing because she was incarcerated at that time.

Under the facts in the record, we cannot conclude that the trial court abused its discretion by denying Mother's motion for continuance. First, there was no evidence of Mother's expected release date or any discussion of how she might complete the service plan if given the additional time. *See In re S.W.*, No. 2-08-164-CV, 2008 WL 4531711, at *3 (Tex. App.—Fort Worth Oct. 9, 2008, no pet.) (mem. op.) (holding that when parent chooses to travel out of state and neglect her service plan and then at the time

of the termination trial requests a continuance to complete the plan, the trial court does not abuse its discretion by denying a continuance); *see also In re J.M.*, No. 02-21-00346-CV, 2022 WL 872542, at *4 (Tex. App.—Fort Worth Mar. 24, 2022, no pet.) (mem. op.) (holding that a parent's inability to complete services because of an incarceration was the consequence of his own actions, not an extraordinary circumstance that required a continuance).

The record also demonstrates that Mother's motion for continuance and the arguments in support of her motion do not claim that she was unprepared for trial. *See In re D.B.*, No. 2-07-428-CV, 2008 WL 2553343, at *6 (Tex. App.—Fort Worth June 26, 2008, no pet.) (mem. op.) (holding that the trial court did not abuse its discretion by denying a motion for continuance where the appellant had four months' notice of the trial setting but waited until the day of termination to ask for a continuance and did not claim that he was unprepared for trial).

We overrule Mother's first issue.

## IV. Conclusion

Having overruled both of Mother's issues, we affirm the trial court's termination order.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  March 6, 2025